CHARLES H. EDWARDS v. JOHN W. SYMONS.

*Partnership—Sale of interest to copartner—Retention of title until
full payment—Assignment for benefit of creditors.*

.1. One of two copartners agreed with the other (a corporation) to
purchase its interest in the joint property and business at a fixed
price, payable in installments, the vendor to retain its title and
ownership of the partnership assets, as its interests might from
time to time appear, until full payment of the purchase price,
and the vendee to have the *sole* management of the business.
No mention was made of *after-acquired* stock or property in the
agreement. The vendor assigned the contract, and soon after
the vendee made a general assignment for the benefit of his
creditors, and the assignee took possession of the assigned prop-
erty and converted it into money by virtue of such assignment.
After the purchase, and up to date of assignment, the vendee
had exclusive control of the business, buying new goods and
incurring new debts to quite an amount. The assignee of the
·contract demanded the property of the vendee's assignee. and,
upon his refusal to deliver same, brought assumpsit for its value,
waiving the tort. At this time the vendee was indebted on the
contract for a large portion of the original purchase price.

*Held*, that the plaintiff was entitled to a judgment for the
amount of goods on hand at time of assignment, and the fix-
tures, that were a part of the stock at date of the contract of
sale, and to that portion of the assignee's collections arising from
the proceeds of the sale of goods forming a portion of the stock
in hand at date of said contract.

*Held*, further, that filing such contract in the proper office
could not enlarge the scope of the agreement regarding the title,
nor could it be considered as creating a lien or mortgage upon
goods bought after the date of the contract of sale.

:2. How. Stat. § 8749, giving the equity court supervisory power over
all matters, questions, and disputes arising under an assignment
by a debtor of his property for the benefit of his creditors, does
not vest *exclusive* jurisdiction in that court to try and determine
the claims of third persons to the assigned property in the hands
of the assignee; but such court *may* dispose of such claims,
where the parties are willing and voluntarily subject themselves
to its jurisdiction. But the *right* to bring an action against the
.assignee for property wrongfully taken or converted *must* exist

and remain in the law court, where a jury can be impaneled, if desired, to determine the merits of the controversy.

3. The rule of law that permits a vendor to retain the title to goods· bargained by him, and placed apparently in the *exclusive* possession, control, and ownership of the vendee, until the whole purchase price is paid, without notice to parties dealing with such vendee, is, at best, a harsh one, and should not be enforced except in cases where the agreement to so hold the title is positive and unambiguous.

Error to Saginaw. · (Gage, J.)   Argued February 2, 1887. Decided April 14, 1887.

Assumpsit.   Plaintiff brings error.   Reversed.   The facts are stated in the opinion.

*Tarsney & Weadock,* for appellant :

One partner cannot make an assignment of the firm property for the benefit of creditors when his copartner is living in the same city and can be consulted : *Kirby v. Ingersoll,* 1 Doug. 484-491; *Kirby v. Ingersoll,* Harr. Ch. 183; *Welles v. March,* 30 N. Y. 344, 351; *Gates v. Andrews.* 37 Id. 659; *Brooks v. Sullivan,* 32 Wis. 449, 451; *Loeb v. Pierpoint,* 58· Iowa, 469.

The Courier Company had a right to sell its interest in this stock of goods, and retain title until the conditions specified were performed : *Dunlap v. Gleason,* 16 Mich. 158; *Johnston v. Whittemore,* 27 Id. 463; *Smith v. Lozo,* 42 Id. 11; *Marquette Manf'g Co. v. Jeffery,* 49 Id. 285; *Weaver v. Bechtel,* 53 Id. 516.

*Wheeler & McKnight,* for defendant:

The assignment of the contract to plaintiff dissolved the· partnership: 1 Coll. Part. § 101.

The right purchased by plaintiff was to some unascertained surplus left after payment of the firm debts: *Menagh v. Whitwell,* 52 N. Y. 146; *Morss v. Gleason,* 64 Id. 204.

The Courier Company had no interest in any specific property: *Hutchinson v. Dubois,* 45 Mich. 145; *Staats v. Bristow,*. 73 N. Y. 264.

Mitchamore's right to make an assignment cannot be questioned: *Rumery v. McCulloch,* 54 Wis. 571; *First National' Bank v. Hackett,* 61 Id. 335; *Kirby v. Ingersoll,* 1 Doug. 491.

As this case stands on the same facts as if in form of trover, we do not see how a recovery can be had by plaintiff: *Cooley, Torts,* 443–445.

Plaintiff has no interest in any goods purchased after December 4: *Coe v. Wager,* 42 Mich. 52.

Only a court of equity can adjust the rights of the creditors and the plaintiff: *Davis v. Merrill,* 51 Mich. 480; *Dyckman v. Valiente,* 42 N. Y. 561; *Bullard v. Kuhl,* 54 Wis. 547.

MORSE, J. September 1, 1883, a contract was made between one Charles H. Mitchamore and the Courier Company, of East Saginaw, by which they formed a copartnership under the name of the Michigan Paper Company, to carry on a general paper business. The Courier Company contributed $8,000 to the capital stock, and Mitchamore agreed to contribute $600. Mitchamore was to be manager of the business, at a salary of $900 per annum. Semi-annual inventories were to be made, and, after paying expenses and interest on the capital invested, the profits were to be divided equally. The contract was for one year, and, if mutually agreed, at the end of that term might be continued for four years more. Mitchamore actually put in but $400, and this he drew out before the end of the first year.

On the first day of September, 1884, William H. Edwards, the father of the plaintiff, acting as manager of the Courier Company, and in fact the real owner of the property, agreed to sell the property and the business to said Mitchamore, and entered into the following contract with him:

"This agreement, made and entered into this first day of September, A. D. 1884, by and between the Courier Company of East Saginaw, Michigan, of the one part, and C. H. Mitchamore, of the same place, of the other part, *Witnesseth*: that whereas, on the first day of September, 1883, the said parties hereto entered into a partnership under the name and style of the Michigan Paper Company, upon the terms and conditions stated in the articles of copartnership between the said parties, of date the said first day of September, A. D. 1883.

"And whereas, the said Mitchamore is desirous of pur-

chasing the interest of said Courier Company in said Michigan Paper Company; and it is agreed between the parties hereto that the value of said interest of said Courier Company in said copartnership is the sum of $6,783.

"Now, it is agreed that the said copartnership between the said Courier Company and the said Mitchamore shall continue under the name and style of 'The Michigan Paper Company,' upon the following terms and conditions:

"*First.* Said Courier Company agrees to sell, and the said Mitchamore agrees to purchase, the interest of said Courier Company in said copartnership for the sum of $6,783, which shall be paid by the said Mitchamore to the said Courier Company as follows: $500 upon the execution of this article; $500 on or before October 1, 1884; $1,000 on or before November 1, 1884; and the balance of said purchase price to be paid as follows: $200 on the tenth day of each month, commencing December 10, 1884, and continuing on the tenth day of each and every month thereafter until the full amount of said purchase price is paid, with interest upon all sums remaining unpaid at the rate of seven per cent. per annum, semi-annually, said interest payable upon the tenth day of March and September, respectively.

"It is agreed that said Courier Company shall keep, hold, and retain its title and ownership of the property, stock, and effects of the said Michigan Paper Company until the full and complete performance of the agreements herein contained, as its interest in said copartnership from time to time may appear; it being understood and agreed that the interest of said Mitchamore in said copartnership shall increase, and the interest of said Courier Company decrease, in proportion to the payments made by said Mitchamore in accordance with the terms and conditions of this contract as hereinbefore stated; that so long as the terms and conditions of this agreement are complied with, and the payments aforesaid are made, all the profits of said business shall belong to said Mitchamore,—the interest upon said payments hereinbefore provided being treated and taken by said Courier Company in lieu of its share of the profits of said copartnership.

"It is understood and agreed that said Mitchamore shall have the sole management and control of said business.

"It is further agreed that if the said Mitchamore shall pay the said Courier Company the sum of $5,500, in addition to the $500 paid upon the execution of this contract, on or before September 20, 1884, with interest upon the amount hereinbefore stated from this date to the time of said pay-

ment, then Mitchamore shall be and become the absolute owner of all the right, property, and effects whatsoever of said Michigan Paper Company."

This contract was assigned December 4, 1884, by the Courier Company to the plaintiff.

March 2, 1885, Mitchamore made an assignment for the benefit of his creditors to the defendant, who took possession of the property and converted it into money under and by virtue of said assignment.

After the contract of September 1, 1884, and up to the date of the assignment, Mitchamore had exclusive possession and control of the business, and the Courier Company and the plaintiff and his father had nothing whatever to do with the same. Mitchamore went on with the business, buying new goods and making new debts to quite an amount. He carried it on under the name of the Michigan Paper Company.

At the time of the assignment, Mitchamore owed for debts he had personally contracted; also for debts that had been contracted between September 1, 1884, and December 4, 1884. He also owed the plaintiff on the contract of September 1, 1884, $4,434.83. He had on hand, in merchandise, $5,198.-09; fixtures, $675.85; and standing accounts, $1,053.37; in all, $6,927.31. The proceeds of this property from sales and collections by the defendant, as assignee, amounted to $5,085.87 in cash. The plaintiff demanded the property of the defendant, and, upon refusal, brought suit in assumpsit for the value of the same, waiving the tort.

The circuit judge ruled that the plaintiff, by the agreement of September 1, 1884, acquired no title to goods purchased by Mitchamore after December 4, 1881; holding that the assignment by the Courier Company of that date dissolved the partnership between said company and Mitchamore. The circuit judge also held that the relations of the parties were such that an action of trover would not lie against the

assignee of Mitchamore, and directed a verdict for the defendant. Verdict and judgment passed accordingly.

The plaintiff brings error, and claims—

1. That the plaintiff was entitled to recover the value of the goods by virtue of the assignment of the contract to him, and under the clause in the said contract retaining the title and ownership of the property, stock, and effects of the Michigan Paper Company in the Courier Company until the full and complete performance by Mitchamore of his part of the contract.

2. That the testimony of Mitchamore showed that there was, at the time of the assignment, $1,900 worth of the stock and fixtures of the Michigan Paper Company which belonged to the stock on hand September 1, 1884; and that $1,053.37, the proceeds of collections by the assignee, are also "effects" of the Michigan Paper Company under the contract of September 1, 1884; and that the plaintiff was, at the least, entitled to a verdict for the sum of $2,953.37 by virtue of said contract.

The defendant contends—

1. That under the statute relative to assignments, and the decisions of this Court in construction of such statute, the plaintiff cannot sue in trover or assumpsit for the property, or any portion of it, after assignment, but must prosecute his claim in equity under section 11 of the assignment statute, section 8749, How. Stat.

2. That the contract of September 1, 1884, is silent as to after-acquired goods and property, and therefore no title could be vested in the Courier Company, or its assignee, in the goods purchased after the date of the contract.

3. There being goods in the assignment owned in the business before Mitchamore came in, debts incurred and owing and goods bought while the contracts of September 1, 1883, and September 1, 1884, were in force, and goods bought and debts incurred after the sale to plaintiff, on December 4, 1884, and there never having been any settlement, the only way to ascertain plaintiff's rights is in equity or under the assignment.

Section 11 of the assignment act heretofore referred to was added in 1881, and provides as follows:

"The circuit court in chancery of the proper county shall have supervisory power of all matters, questions, and disputes arising under such assignment, except as otherwise pro-

vided in this act, and may, on the application of the assignee or any person interested, make all necessary and proper orders for the management and disposition of the assigned property, the distribution of the assets and avails, the recovery of all property claimed by third persons, and may, from time to time, require new bonds or sureties, who shall justify as herein provided."

We do not think that the Legislature, by the addition of this section, intended to vest exclusively in the court of chancery the right of trying and determining the claims of third persons to property in the hands of the assignee, and taken possession of and held by him by virtue of the assignment. The court of chancery *may* dispose of claims of this kind, where the parties are willing and voluntarily subject themselves to its jurisdiction. But the right to bring an action against the assignee for property wrongfully taken or converted must exist and remain in a court at law, where a jury can be impaneled, if desired, to determine the merits of the controversy. Indeed, under our Constitution and the previous adjudications of this Court, the statute would le considered and declared unconstitutional if it undertook to place exclusive jurisdiction in a court of equity, and to consequently deprive the claimant to the property of a jury trial. *Risser v. Hoyt,* 53 Mich. 185, 200, 201; *Swart v. Kimball,* 43 Id. 443; *Tabor v. Cook,* 15 Id. 322; *Horton v. Grand Haven,* 24 Id. 465; *Powers' Appeal,* 29 Id. 504.

We therefore hold that the plaintiff had the right to maintain his action in a court at law. The decisions of this Court, referred to in the brief of the counsel for defendant, cannot be construed as militating in any way against this right. These cases were those where creditors sought, by action in their names and behalf, to secure possession or control of property in the hands of third persons, for the uses and purposes of the assignment, claiming that such property was the property of the assignor, and was fraudulently withheld from the assignment, and should be subjected to the trust. It was

held in such cases, where, by a fraudulent mortgage or payment or the secretion of property, the whole assets of the assignor were not assigned and delivered by him to the assignee, the assignee was the proper person to take action to bring such assets within and under his control for the purposes of the trust. Nor did we in any of these cases confine his right to bring such action to a court of equity.

Following the tenor and spirit of our decisions, the necessary and logical result is that, if the assignee has the right to bring an action at law, as he certainly has, against a third person who is in possession of property that belongs to the assignor, then the converse of the proposition is true, that a third person has also the right to maintain an action in the same court for property belonging to him, and unlawfully held by the assignee. See *Sweetzer v. Higby*, 63 Mich. 13; *Angell v. Pickard*, 61 Id. 561; *Scott v. Chambers*, 62 Id. 532; *Root v. Potter*, 59 Id. 498.

The title to the property and effects of the Michigan Paper Company, retained by the Courier Company in the contract of September 1, 1884, cannot be extended, in my opinion, to goods or property bought by Mitchamore after that date. The contract does not, by express terms, cover after-acquired goods, and it would not be in accordance with justice to extend it by implication. The rule of law that permits a vendor to retain the title to goods bartered by him, and placed apparently in the exclusive possession, control, and ownership of the vendee, until the whole purchase price is paid, without notice to parties dealing with such vendee, is, at best, a harsh one, and should not be enforced except in cases where the agreement to so hold the title is positive and unambiguous.

The contract in this case was filed in the office of the city clerk of East Saginaw on the thirteenth day of October, 1884, but this filing could not enlarge the scope of the agreement as regarded the title, nor could it be considered as

creating a lien or mortgage upon goods bought after September 1, 1884.

But the plaintiff, under the facts in the case, was entitled to a judgment for the amount of the goods on hand at the time of the assignment, and the fixtures, that were a part of the stock when the contract of September 1, 1884, was entered into, and to such portion of the collections of the assignee as came from the proceeds of the sale of such goods or property as formed a portion of the stock in hand at the date of said contract. The court, therefore, erred in directing a verdict for the defendant, and the judgment will be reversed, and a new trial granted, with costs of this Court to plaintiff.

The other Justices concurred.