## No. 5869.

### LOVING PUBLISHING COMPANY *v.* N. B. JOHNSON ET AL.

1. CONTRACT—FRAUD.—One who does business in his own name, in replenishing from time to time by purchasing and in selling in the usual course of trade a stock of goods, under such circumstances as to induce others dealing with him to regard him as the real owner, must as to creditors and purchasers be regarded as the real owner. This case distinguished from Tufts v. Bank, 63 Texas, 113.

2. SAME.—A secret contract by which one who is the apparent owner of a stock of goods and merchandising in his own name is to pay for them to the former owner in instalments of three-fourths of the gross receipts from sales at stated periods, to replenish by purchase from time to time, the title to the original stock, and to that bought to replenish, to remain in such former owner until the original debt is paid, can only be regarded as to purchasers and creditors without notice as a device for the perpetration of fraud.

APPEAL from Parker.    Tried below before the Hon. R. E. Beckham.

*Roach & Richardson,* for appellants, cited Revised Statutes, articles 4839, 4840; 63 Texas, 506; 27 Texas, 243; 31 Texas, 622; 15 Texas, 388.

*Albert Stevenson,* for the appellees, cited Tufts v. City National Bank, 63 Texas, 113; 58 Texas, 51; 4 Texas Law Review, 337; Commission of Appeals, Deal v. Smith, No. 42, page 663; White & Willson's Civil Cases, pages 17, 152–154, 720, and note, and authorities cited; Benjamin on Sales, third American edition, 320, and note, and authorities cited.

WILLIE, CHIEF JUSTICE. The appellant sued out an attachment against the property of Surber & Taylor, and caused it to be levied upon a stock of goods to which the appellees made claim under our statute for the trial of the right of property. The goods, at the date of the levy, were in the possession of Surber & Taylor; so the burden of proof as to their ownership was upon the appellees. They sought to prove this by a written agreement entered into between the appellees and Surber & Taylor, January 11, 1883, wherein the former, for the consideration of one thousand three

hundred and seventy-four dollars and seventy-five cents, to be paid by the latter, promised to sell them a stock of goods, describing its location, when Surber & Taylor should have paid them the above sum of money. Surber & Taylor were to receive the goods immediately, with full right to manage and dispose of them in the course of trade. They were to keep them replenished, so that at no time they should be of less value than one thousand dollars. The one thousand three hundred and seventy-four dollars and seventy-five cents was to be paid as follows: One hundred dollars, cash, and three-fourths of the gross receipts of the sales of the stock at the end of each week until the whole sum was paid. The title of the said stock was to remain in appellees until the whole consideration was paid. Upon failure to turn over the three-fourths of gross receipts to appellees, they might take possession of the goods and retain the gross receipts already paid them. The title to such goods as were bought to replenish the stock was to remain in the appellees until the entire one thousand three hundred and seventy-four dollars and seventy-five cents was paid. Surber & Taylor reserved the right to pay the consideration before it could be paid in instalments, as stated. This instrument was never recorded.

Surber & Taylor took possession of the goods immediately; sold them in the usual course of trade, replenished the stock with other goods, and, in short, carried on the mercantile business with them as if they were in fact owners of the property. They made payments to the appellees to the amount of nine hundred dollars in all, down to the time the attachment was levied. At that time the stock consisted in part of the goods originally transferred to Surber & Taylor, and in part of goods they had purchased and placed in the stock, but how much of each was not shown. The appellees showed the contract to Loving just previous to the making of the levy. These are all the facts important to the decision of the cause. The court below gave judgment for the claimant, and the plaintiffs in attachment appealed to this court.

The decision of the district judge in this case is sought to be sustained upon the principles announced in Tufts v. Bank, 63 Texas, 113; but the two cases are unlike each other in many important particulars. There the contract was made in reference to a specific article, and no power of sale was given to the vendee.

Here the agreement is made in reference to a stock of goods,

consisting of a multitude of different articles, and they are to be sold in the usual course of trade.   Not only so, but these goods are allowed to be replaced by others to' be purchased by the vendee, and these again to be sold and .others purchased, till there may not remain the smallest remnant of the original stock; and yet, through all these mutations, the stock is to be protected against the creditors of the vendee.   This arrangement, too, is secret, no record made of it, and no knowledge of its existence brought to the world.

A better device for the perpetration of fraud upon the creditors ·of the vendees.could hardly be invented.   The vendees are placed in a position where they can enjoy all the benefits of a merchant without being subject to any of the usual liabilities which may arise in the course of trade.   They hold themselves out to the world as the owners of the goods with every outward appearance of ownership and may, thereby, obtain a false credit.   (Hilliard v. Cagle, 46 Mississippi, 309.)   They can sell the property as they see fit, devote a large portion of the proceeds to their own benefit, and set their creditors at defiance.   They can hinder and delay them as long as they please and their confidential vendors may deem proper.   (Bump on Fraudulent Conveyances, 123.)

Very different is the case where specifically designated articles, particularly described and which can be easily identified, are sold conditionally to a party who himself has no power to sell to a third person.   Purchasers can not complain if they buy from him, because the appearance of ownership of personal property is mere evidence of it, and not ownership itself.   They must know that the possessor can not give him the title of another and they must take heed accordingly.   For the same reason creditors who deal with him on account of his possession are not always protected if this possession is of such character as not to vest title in him.   But where parties are in possession of a stock of goods, wares and merchandise, holding them in their own name, disposing of them daily in the usual course of trade, and adding to them at their will and no notice is given of right other than that which usually accompanies such dealing with goods, every circumstance is inconsistent with anything but an ownership existing in these parties, and the apparent must be treated as the real ownership as to purchasers and creditors.

The policy of our statutes is entirely opposed to allowing such a contract as that under decision to be supported as against creditors.   No deed of trust, mortgage or lien which permits the

grantor to continue in possession and sell the goods mortgaged in the usual course of trade, is allowed to stand. If Surber & Taylor had originally owned these goods they could not have mortgaged them to Johnson & Co. and reserved the same terms as are contained in this agreement without doing a void thing, though the instrument was recorded and no one deceived thereby. (Garrity v. Thompson, 64 Texas, 597.)

But here the same advantage is sought to be given to a debtor by a sale, reserving title, of which no notice of any character is given, and there seems much stronger reasons why the transaction should not be upheld. In fact, when all its features are considered, it bears a closer resemblance to a reservation of a lien than a reservation of title. To that portion of the goods purchased after the contract was signed, the appellees never had any title to reserve; and the interest reserved in the entire stock is—at least till the happening of certain contingencies—a claim to have three-fourths of the proceeds of their sale applied to the payment of an indebtedness, the other fourth to go to the vendees themselves. The purpose of the conveyance was to vest title in the vendees for the purposes of sale, the proceeds to be applied to the debt of the vendors, and the balance to become the property of the vendees, all of which are important characteristics of a deed of trust with power of sale.

Its resemblance to a conditional sale such as is treated of in Tufts v. Bank is of a much less striking character. That sale can not be called conditional as to the title vested in the vendee, which contemplates a sale by the latter of the article conveyed prior to the performance of any conditions on his part; and the only conditions annexed are such as are to be performed after title has passed from both vendor and vendee. We think the instrument was void as to creditors and the goods liable to the attachment.

This view could be well maintained on the ground that the goods on hand at the date of the contract were mingled with those purchased thereafter, to which latter the appellees could reserve no title, and as they were not and could not be distinguished from each other, creditors were authorized to treat them all as the property of the defendants in attachment.

The judgment below is erroneous, and will be reversed and judgment here rendered for the appellants.

*Reversed and rendered.*