RICHARDSON DRUG COMPANY ET AL. V. ALICE M. TEASDALL ET AL.

FILED NOVEMBER 18, 1897.   No. 7595.

1. **Conditional Sales.** The contract between the parties set out in the opinion and *held* one of conditional sale.

2. ———: DELIVERY: RIGHT OF POSSESSION. Where property is sold and possession delivered to the vendee on condition that the title shall remain in the vendor until the purchase price is paid, a failure of the vendee to make payments of the purchase money according to the terms of the contract vests the vendor with the right of possession to the property conditionally sold.

3. ———: ACCESSION AND CONFUSION: REPLEVIN. The subject-matter of a conditional contract of sale was a stock of drugs which the vendee was, by the contract, required to dispose of at retail and not to deplete. He purchased and added to the original stock other goods, and then made default in payments of the purchase money promised, and the vendor seized on a writ of replevin both the original stock conditionally sold and the goods afterwards purchased and added to the stock by the vendee, *Held* (1) That the

vendor was entitled to a verdict only for such of the original stock conditionally sold as remained undisposed of; (2) that the vendee was entitled to a judgment for a return of such goods by the vendor as had been purchased and added to the original stock by the vendee after his conditional purchase thereof; (3) that the vendee's mixing of the goods absolutely purchased by him with the goods conditionally purchased was neither wrongful nor fraudulent. IRVINE, C., dissenting from first and second clauses of last syllabus.

ERROR from the district court of Lancaster county. Tried below before HALL, J.  *Reversed.*

*Stevens & Cochran* and *John P. Maule,* for plaintiffs in error.

*Charles O. Whedon, contra.*

RAGAN, C.

On January 27, 1892, the Richardson Drug Company and the Lincoln Paint & Color Company, hereinafter called the Drug Company, owned a stock of drugs, together with a lot of drug-store fixtures, including a soda fountain, then situate in a building in the city of Lincoln, and on said date, in consideration of $2,000 sold and delivered possession of said stock of goods to Alice M. and Thomas L. Teasdall, hereinafter called the Teasdalls. The contract of sale between said parties was evidenced by a writing of that date, which, so far as material here, was in words and figures as follows:

"That said parties of the second part [the Teasdalls] are to forthwith become the agents of the parties of the first part [the Drug Company] and as such shall at once take possession of all the stock of drugs, chemicals, paints, oils, merchandise, and all fixtures belonging to said stock at number 1843 O street, Lincoln, Nebraska, and shall, as such agents, sell such goods at retail in the ordinary course of business, and pay to the parties of the first part the sum of one hundred dollars in cash for each month for the first two months, and the sum of $150 per month thereafter until said parties of the second part

shall have paid to the said parties of the first part the total sum of two thousand ($2,000) dollars net, the monthly payments to be commenced promptly on March 15, 1892, and to be made on the 15th day of each and every month thereafter until the whole sum shall have been paid. And said parties of the second part shall receive no compensation for their services as such agents save the net profits of said business over, and in excess of, the said amounts to be paid to said parties of the first part. And said parties of the first part agree and guaranty that all said profits shall be made, and all payments agreed made, without in any degree depleting said stock of goods. Said $2,000 shall be applied as follows: Sixteen hundred dollars ($1,600) to the Richardson Drug Company and four hundred ($400) dollars to the Lincoln Paint & Color Company, and said monthly payments shall be made to the Richardson Drug Company and by them divided as follows: 80 per cent to be retained by the said Richardson Drug Company and 20 per cent to be turned over as paid to the Lincoln Paint & Color Company; and when the said two thousand ($2,000) dollars shall be paid, said parties of the first part shall transfer to said parties of the second part all their right, title, and interest in the said stock of drugs and fixtures; but until said sum of two thousand ($2,000) dollars shall have been fully paid the title to all said property shall be and remain in said parties of the first part. When said amount of two thousand ($2,000) dollars shall have been fully paid said parties of the first part shall release and deliver to the said parties of the second part all claims and evidences of indebtedness which they now hold against them."

The Teasdalls took possession of the property mentioned in this contract and made the monthly payments provided therefor for some months. During the time the Teasdalls were in possession they purchased a large quantity of druggist's goods and added them to the stock. They then failed to make a payment due under the con-

tract and the Drug Company replevied the entire stock of goods and fixtures, including the goods purchased and put into the stock by the Teasdalls after their taking possession under the contract. On the trial the district court directed a verdict for the defendants, upon which judgment was entered, to review which the Drug Company prosecutes here a petition in error.

1. The contract recited above evidenced a conditional sale of the property therein mentioned from the Drug Company to the Teasdalls. It vested the Teasdalls with the possession of the property embraced in said contract and reserved the title to said property in the Drug Company until the full payment of the purchase price of $2,000.

2. The first question presented is whether the default of the Teasdalls to make the monthly payments for the property purchased of itself conferred upon the Drug Company the right of possession of the property conditionally sold, the contract not specifying that in case such default occurred the Drug Company should be entitled to the possession of the property? The authorities constrain us to answer that it did, though the precise question does not appear to have been determined by this court. In *Aultman v. Mallory*, 5 Neb., 178, it was ruled: "A sale and delivery of goods, on condition that the property is not to vest until the purchase money is paid or secured, does not pass the title to the vendee until the condition is performed; and a vendor, in case the condition is not fulfilled, has a right to repossess himself of the goods." The property involved in that case was a mowing machine, and the contract provided that the title should remain in Aultman, Miller & Co. until the purchase price was paid. The contract is not set out in the opinion, and we do not know whether it provided that, in case the purchaser of the machine made default in payment for the same, Aultman, Miller & Co. might retake possession thereof; nor does it appear whether the precise question under consideration here was pre-

sented. The Aultman case was followed in *McCormick v. Stevenson*, 13 Neb., 70. But the contract in that case expressly provided that the McCormick Company might take possession of the property sold if the vendee thereof made default in his contract. The doctrine of the Aultman case was again adhered to in *Albright v. Brown*, 23 Neb., 136, although that case was not referred to in the opinion. In *Norton v. Pilger*, 30 Neb., 860, the doctrine of the Aultman case was again affirmed; and in *Peterson v. Tufts*, 34 Neb., 8, the rule laid down in the Aultman case was once more reaffirmed. In the latter case the contract did not provide that the vendor should be entitled to the possession of the property conditionally sold if the vendee made default in his promises. But neither in that case nor in any of the other cases cited was the question presented whether the default itself of the vendee vested the vendor with the right to retake possession of the property conditionally sold.

*Bradshaw v. Warner*, 54 Ind., 58, and *Hodson v. Warner*, 60 Ind., 214, were actions of replevin brought by conditional vendors of a safe, the contract providing that the title should remain in the vendor until the safe was paid for; but the contract was silent as to whether, upon the vendee making default in his payments, the vendor should be entitled to retake possession of the property. The question seems to have been presented in the latter of those two cases whether in such case a replevin action would lie at the suit of the vendor, and the court held that it would. To the same effect see *Blanchard v. Cooke*, 144 Mass., 207, and *Salomon v. Hathaway*, 126 Mass., 482.

*Wiggins v. Snow*, 50 N. W. Rep. [Mich.], 991, was replevin by a vendor for property conditionally sold to a vendee, the latter having made default in payments promised, and the contract being silent as to whether, in case of such default, the vendor might retake possession or should become entitled to the possession of the property conditionally sold. One of the points presented to the court was that replevin would not lie at the suit of a

conditional vendor simply because the vendee had made default in the payments promised, in the absence of a provision in the contract that by reason of such default the vendor should be entitled to the possession of the property; but the court overruled the contention and held that the default of itself vested the vendor with the right to the possession of the property conditionally sold. It follows from what has been said that the district court erred in directing a verdict for the Teasdalls.

3. The contention of the Drug Company in the court below and here was and is that it was entitled to a verdict awarding it the possession, not only of all the goods remaining undisposed of which were embraced in its sale to the Teasdalls, but was likewise entitled to the possession of all the goods in the stock which had been purchased and placed therein by the Teasdalls after their purchase from the Drug Company. With this contention we do not agree. The contract does not provide that the Drug Company shall have the title to any goods which the Teasdalls might purchase and put into this stock. If the contention of counsel is correct, then the Drug Company is liable for all the goods purchased by the Teasdalls and added to this stock. Certainly the Teasdalls in buying goods and adding to this stock were acting for themselves, and not as agents for the Drug Company; and for the goods so purchased the latter is in nowise responsible. This precise question was before the supreme court of Michigan in *Wiggins v. Snow, supra.* The subject-matter of that contract was a whirligig, and the conditional vendee, after receiving the machine, supplied certain parts therefor. The vendor replevied the machine by reason of the vendee's default in making certain payments promised and took not only the machine actually sold to the vendee, but also took the parts of the machine supplied by the vendee himself. The court held that the vendee was entitled to a verdict for a return of the parts of the machine supplied by himself. Because it is inconvenient or difficult to separate the original

stock sold to the Teasdalls from that subsequently pur-
chased by them and added is not an argument for read-
ing into this contract an agreement between the parties
which its language does not evidence. In construing
this, as all other contracts, one inquiry is, What did the
parties intend thereby? And it must suffice to say in
this connection that by no possible construction of this
agreement can it be held that the parties thereto in-
tended the Drug Company should own any of the goods
purchased and added to this stock by the Teasdalls.
Possibly difficulties will arise in separating the original
stock purchased by the Teasdalls of the Drug Company
from the goods purchased by the Teasdalls and added to
this stock; but that argument only tends to show that a
stock of drugs should not be made the subject-matter of
such a contract as this. The contract itself is a harsh
one, but nevertheless the Drug Company is entitled to
have it enforced; and by the terms of this contract, and
by reason of the default of the Teasdalls to make the pay-
ments promised, and at the times promised, the Drug
Company became entitled to the possession of all the
goods undisposed of which it had conditionally sold to
the Teasdalls; but it was not entitled to the possession
of any of the goods in the stock which had been added
thereto by the Teasdalls after their purchase from the
Drug Company; and for such of these goods as the Drug
Company seized on its replevin writ the Teasdalls were
entitled to a return. In other words, the Drug Company
is entitled to the "pound of flesh" named in its bond.
"The court awards it, and the law doth give it;" but it is
not entitled to anything more.

4. Another argument urged here by the Drug Com-
pany and insisted on in the court below is, that it was
entitled to maintain its action in replevin for all the
goods seized by it because the Teasdalls, of their own
accord, had wrongfully mixed and mingled the goods
purchased by them after the conditional sale with the
goods conditionally purchased of the Drug Company.

To sustain this contention we are cited to *First Nat. Bank of Denver v. Scott*, 36 Neb., 607.    But the case cited is not an authority for the contention of the plaintiff in error. The Teasdalls have not made any wrongful or fraudulent admixture of the goods purchased by them with the goods conditionally purchased of the Drug Company. By the contract between the parties the Teasdalls were required to at once take possession of the stock of drugs, to sell the goods at retail in the ordinary course of business, and not to deplete the stock.    The contract then contemplated not only that the Teasdalls would sell at retail the goods conditionally purchased, but that they would go into the markets and buy other goods to take the place of those sold and at all times keep the stock up to what it was worth at the time it was originally purchased by them.

The judgment of the district court is reversed and the cause remanded.

                            REVERSED AND REMANDED.