OLIVER WILSON v. DAVID A. LEWIS.

FILED JANUARY 8, 1902.    No. 10,844.

Commissioner's opinion, Department No. 3.

1. Evidence: OWNERSHIP: ALLEGATION. Evidence examined, and *held* sufficient to support an allegation of general ownership.

2. Contract: SALE: PERSONAL PROPERTY: ATTACHMENT: EXECUTION: LIEN. Where a contract in writing whereby the transfer of title or ownership of personal property is made to depend on a condition is not filed, such omission is available only to such creditors as have perfected a lien on the property by the levy of an attachment or execution, while the vendee was in possession, unless it appear that they extended credit to the vendee on the faith of his apparent ownership.

3. **Conditional Contract: Vendor: Vendee: Creditors.** Where a conditional contract of sale provides that the title shall remain in the vendor until the purchase price is paid, and that in case of default he may retake the property and sell, and from the proceeds deduct the unpaid balance of the purchase price and pay the surplus to the vendee, and further provides that while the vendee is in possession he may sell the goods in the usual course of trade, and replenish the stock from time to time, *held*, that where the latter provision has been fully executed, by the voluntary surrender of the stock, as thus replenished, to the vendor, neither the vendee nor creditors whose executions were levied subsequent to the surrender of the stock to the vendor will be heard to assail the validity of such provision.

Error from the district court for Boone county. Tried below before Thompson, J. *Affirmed.*

*Spear & Mack, R. F. Williams, J. S. Armstrong* and *C. J. Garlow*, for plaintiff in error.

*J. A. Price* and *H. C. Vail*, contra.

Albert, C.

In November, 1897, Gunder O. Qualset and Millie A. Brink, the latter representing a concern known as the Brink Drug Company, entered into a contract in writing which is as follows:

"This agreement, made and entered into by and between Gunder O. Qualset of Newman Grove, Madison county, Nebraska, party of the first part and Millie A. Brink of Fremont, Dodge county, Nebraska, party of the second part, witnesseth: The said first party agrees to sell his stock of drugs and toilet articles, and the fixtures in his drug store at St. Edwards, Boone county, Nebraska, to the said second party, and the said second party agrees to buy said drug stock and fixtures on the terms and conditions following, to-wit: The invoice price of said stock is $1,417.50 on November 10, 1897, and the said second party agrees to pay for said goods in payments as follows: Four hundred seventeen and 50-100 dollars cash in hand; one thousand dollars, ($1,000.00) in payments as follows: Fifty ($50.00) dollars on the first day of each month for

twenty (20) months, commencing on the first day of January, 1898. Each of said payments shall draw interest at the rate of 10% and the interest shall be paid on each payment when the monthly payment is made. Said second party shall have the right to make payments at any time on or before said payments are due. But if payments are made in advance of the time specified, they shall apply on the reduction of the indebtedness, but shall not be deemed as allowing the next monthly payments to pass. It is expressly agreed and understood that the title to, and in said stock of drugs and fixtures shall be and remain in the said first party until the said second party shall have fully paid each and every payment to the said first party. Said second party shall have the right to sell from said stock in the usual course of business, and hereby agree to keep said stock replenished, so that the value of the said stock shall at all times be as much as the invoice price of said stock at the date of this agreement, viz: $1,417.50. The said second party agrees to keep said stock insured in a sum not less than $500, loss if any, payable to the said first party. It is further agreed that the said first party shall at all times during the continuance of this agreement, have the right to examine said stock of goods, and fixtures, and if he finds that said stock of goods and fixtures are being reduced in value, or being allowed to depreciate by reason of bad management, or neglect, he shall have the right to take immediate possession of said stock and fixtures, and declare this agreement at an end, in the following manner: He shall advertise said stock for sale for at least 20 days, he shall give the said second party at least 20 days notice in writing of said sale, and said sale may be either public or private as said first party may elect. Said first party shall retain from the proceeds of said sale of goods and fixtures so much as is due him from said second party on this contract, the costs of advertising and sale and a further sum of $200 as damages for the non-fulfillment of the agreement; the balance of the proceeds from said sale

shall be paid to said second party. The said second party agrees to pay all taxes, rents, licenses and expenses in running said business, and the profits from said business, over and above the payments to be made the said first party, shall be said second parties full compensation for any and all services in the managing and running of said business. In case the said second party shall fail, neglect, or refuse to fulfill each and every part of this agreement, the said first party may, at his election take immediate possession of said stock and fixtures and sell them in the manner as heretofore provided. As soon as the said second party shall have fulfilled each and every provision of this agreement, and made all payments as agreed, the said first party shall make and deliver to the said second party a bill of sale of said stock and fixtures, free from all encumbrances, and liens that are against said stock up to this date.

"Signed in duplicate this — day of November, 1897. "In presence of:

| "C. A. RANDALL, | GUNDER O. QUALSET, |
| "EARL C. BRINK. | MILLIE A. BRINK." |

The drug company went into possession, in pursuance of the terms of said agreement, and conducted the business, to all outward appearance, as owners of the stock. The agreement was not filed for record until the 2d day of December, 1898. On the first day of December, 1898, Qualset assigned his interest in the contract, and all his rights thereunder, to David A. Lewis, the plaintiff below. On the 2d day of January, 1899, the plaintiff took possession of the stock, claiming under the contract. On the 11th day of January, thereafter, judgments were rendered, some against the individual members of the drug company, others against it by name, on which executions were issued, placed in the hands of a constable, the defendant below, for service and levied on the stock of goods in question, then in the possession of the plaintiff in this case. The plaintiff brought replevin, alleging general ownership. A trial resulted in a verdict for the plaintiff.

From a judgment rendered thereon, the defendant prosecutes error to this court.

The defendant insists that the instrument in question is a chattel mortgage, and that, as the plaintiff alleged general ownership, such allegation is not satisfied by the proof of possession under such instrument. The answer to that is that it is the policy of the law to give effect to the intentions of the parties in the construction of the writing which they have made the final repository of the propositions upon which their minds finally met in common assent. By the express terms of this agreement, the title, that is the general ownership, was to remain in the vendor until all the terms and conditions on the part of the vendee had been kept and performed. Having thus expressed themselves unambiguously, we can see no reason why this court should strain after reasons for thwarting their obvious purpose. It is true that at first sight the authority given the vendee to dispose of the articles composing the stock in the usual course of trade, and supply their place with others of like nature, would seem to be inconsistent with the plaintiff's claim of general ownership. But it must be kept in mind that the parties to the contract, at the time it was made, had in contemplation the stock in its entirety, and regarded it as a unit. That part of the contract was fully executed, was treated by the parties as valid and binding, and neither they nor anyone claiming under them, or either of them, under the facts in this case, can now be heard to challenge its validity. As bearing on this question, see *Richardson Drug Co. v. Teasdall*, 52 Nebr., 698; *Keystone Mfg. Co. v. Casselius*, 76 N. W. Rep. [Minn.], 1028. But it is urged by the defendant, that the failure to file the contract for record operated as a fraud on the execution creditors whose indebtedness against the drug company accrued between the date of such contract and the time it was filed for record. That such contract would operate as a fraud on persons advancing credit to the vendee, on the faith of its apparent ownership of the stock, is undoubtedly true. But that proposi-

tion is not available to the defendant, for the reason that
the evidence fails to bring any of the creditors within that
rule. We have searched the record with some care, and
have failed to find that any one of the creditors parted
with his goods on the faith of the apparent ownership of
the drug company. The nearest approach that is made to
covering that point, is the testimony of one creditor, who
says, that had he known of the existence of such contract,
he would not have sold goods to the vendee. But there is
no evidence whatever that he had reason to believe or did
believe that the stock of goods belonged to the vendee, or
that he was in any manner misled by its apparent owner-
ship of the stock. Those omissions are fatal to the theory
of the defendant under consideration.

The defendant devotes considerable space to discussion
of the proposition that where the possession of property
described in a chattel mortgage remains in the mortgagor,
and the mortgage, or a copy thereof, is not filed as re-
quired by law, the mortgage is absolutely void as to the
creditors of the mortgagor, no matter whether they have
actual notice or not. That proposition is true. *Spauld-
ing v. Johnson,* 48 Nebr., 830. But there is another propo-
sition of law equally true, and which also has the sanction
of this court, and that is that a chattel mortgage becomes
valid as to creditors on the date of the filing or on the
date of taking actual possession of the property by the
mortgagee. *Forrester v. Kearney Nat. Bank,* 49 Nebr.,
655; *Meyer v. Miller,* 51 Nebr., 620. The term "cred-
itors," as used in the cases just cited, means attaching or
execution creditors. In *Forrester v. Kearney Nat. Bank,*
*supra* [p. 658], it is said: "A chattel mortgage becomes
valid as to creditors as of the date of the filing of the same
or the taking of actual possession of the property by the
mortgagee." A creditor, as such, except under certain
circumstances not shown in this case, has no lien upon nor
interest in the property of his debtor before the levy of an
attachment or execution. In this case, before they ac-
quired any interest by the levy of their executions, the

plaintiff had obtained possession. Hence, even were we to concede that the instrument in question is merely a chattel mortgage,—a point we do not decide,—it became valid and binding as to the creditors at the date the plaintiff took possession.

The defendant complains of an instruction of the court as to the effect of some of the judgments upon which the executions in question were issued. But the availability of any such judgments as a defense in this case involved a finding that the instrument in suit was invalid as between the plaintiff and the judgment creditors. From the nature of the verdict, the jury must have found all disputed facts affecting the liability of the instrument in favor of the plaintiff. Hence, whatever error there may have been in such instruction is error without prejudice.

The defendant also complains of instruction No. 10, which is as follows: "You are instructed that it is incumbent on the part of the plaintiff to identify the goods claimed in this action as the goods mentioned in the contract between Millie A. Brink and Gunder O. Qualset, and in no case in this action can he recover other goods than those so identified, unless you further find from the evidence that Earl C. Brink acting on behalf of the Brink drug company, surrendered the possession of the same to the plaintiff under and by virtue of the conditional contract introduced in evidence by him, before the judgments introduced in evidence were obtained." The objection to this instruction is that it permits the jury to find in favor of the plaintiff as to those parts of the stock that were added to it after the instrument in question was executed, and while the vendee was in possession of the property and disposing of the same in the usual course of trade, which were surrendered to the plaintiff, under and by virtue of the instrument in question. There is sufficient to sustain a finding that the stock thus replenished was voluntarily surrendered to the plaintiff by the vendee in pursuance of the contract as construed by the parties themselves. Whatever may be said as to the validity of

such contract while executory, certainly neither party
should be heard to complain of it when fully executed.
The creditors, under the facts in this case, are in no better
position to assail the validity of that provision than the
vendee. There was no error in the instruction.

We recommend that the judgment of the district court
be affirmed.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing
opinion, the judgment of the district court is

                                              AFFIRMED.