## ROBINSON v. BOWE.
### No. 9958.

Circuit Court of Appeals, Eighth Circuit.
Oct. 12, 1934.

A. B. Fairbank, of Sioux Falls, S. D. (Chamberlain & Hall, of Huron, S. D., and Boyce, Warren & Fairbank, of Sioux Falls, S. D., on the brief), for appellant.

Irwin A. Churchill, of Huron, S. D. (B. B. McClaskey and Churchill & Benson, all of Huron, S. D., on the brief), for appellee.

Before SANBORN and WOODROUGH, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge.

The suit was instituted at law by appellee to recover the value of a stock of goods alleged to be a preferential transfer under the provisions of the Bankruptcy Act.

For some time prior to the year 1929, the appellant, Albert Robinson, had successfully conducted a retail shoe business in the city of Huron, S. D., known as Robinson Shoe Company. In that year he sold the business and stock of goods to his nephew, Albert E. Robinson, under a conditional sale contract signed by Albert E. Robinson and his wife Mabel Glenn Robinson, and the conditional sale contract was duly filed for record.

The business was conducted by the nephew for a period of about three years at a loss, and on February 27, 1932, Albert Robinson took possession of the store and stock of goods, furniture, etc., under the provisions of the conditional sale contract and in such taking followed the statutes with reference to retaking property under the uniform conditional sales law of South Dakota, but did not follow or attempt to follow the provisions of the statute with reference to the foreclosure of chattel mortgages.

On June 10, 1932, an involuntary petition in bankruptcy was filed against Albert E. Robinson, and he was adjudged a bankrupt on November 25, 1932. His trustee in bankruptcy brings this suit to recover the value of the property taken by Albert Robinson.

Prior to the trial the parties agreed that the case be tried to the judge without the intervention of a jury.

The trial court found, among other things:

That there was nothing in the conditional sales contract or other evidence in the case that would support a finding that the contract extended to or covered after-acquired property.

That during the period of time Albert E. Robinson operated the store he sold, at retail, merchandise of a retail value in excess of $200,000, and purchased merchandise to replenish said stock at a cost of approximately $155,000, none of which was purchased from defendant, and on the 27th day of February, 1932, if there remained in said stock of merchandise any of the original merchandise transferred by defendant to Albert E. Robinson under the terms of said conditional sale contract, the same was insignificant in amount and had become indistinguishably mixed and mingled with the new merchandise, with the knowledge and consent of the defendant, and the same could not be segregated from the new or after-acquired merchandise.

That the value of the merchandise taken over by Albert Robinson on February 27, 1932, was $19,052.84, and there had been furniture and fixtures added of the value of $223.

That, at the time Albert Robinson took over the stock of goods under the conditional sale contract, said Albert E. Robinson was indebted to him for more than $22,000 and to other creditors for merchandise purchased principally at wholesale for the use and conduct of the business in excess of $14,000.

That said Albert E. Robinson had no substantial property other than the stock of goods, and, at the time the property was taken over by Albert Robinson, Albert E. Robinson was insolvent and this was known to Albert Robinson, and that his receipt of the goods was a transfer that enabled him to obtain a greater percentage of his debt than other creditors of the same class.

That the property taken over by Albert Robinson in February, 1932, has been converted by him to his own use.

That the transfer of the future acquired property to Albert Robinson was within four months prior to filing of the petition in bankruptcy and constituted a preferential transfer under section 60 of the Bankruptcy Act (11 USCA § 96).

The court allowed a credit of $744.92 to Albert Robinson for taxes paid and rendered judgment in favor of the trustee and against Albert Robinson for the sum of $18,530.92 and interest.

The suit being at law, the findings of fact by the trial judge have the same force and effect as a verdict by a jury, section 773, title 28 U. S. C. (28 USCA § 773), and the appellate courts will not review findings of fact by the trial judge where there is substantial evidence to support his findings. Bayless v. Eager, 69 F.(2d) 269 (8 C. C. A.); 1st Nat. Bank of Ortonville v. Andresen, 57 F.(2d) 17 (8 C. C. A.); United States v. Great No. Ry. Co., 57 F.(2d) 385 (8 C. C. A.); Federal Intermediate Credit Bank v. L'Herrison, 33 F.(2d) 841 (8 C. C. A.); Pan-American Petroleum & Trans. Co. v. United States, 273 U. S. 456, 47 S. Ct. 416, 71 L. Ed. 734.

There is substantial evidence to support the facts found by the trial court, and they cannot be disturbed on this appeal. We may, however, review conclusions of law.

If the conditional sale contract included a lien on future acquired property, then, as

the sale contract was executed, filed, and recorded more than three years prior to the taking of the property by Albert Robinson, the lien could not be challenged as a preference by the trustee in bankruptcy. Humphrey v. Tatman, 198 U. S. 91, 25 S. Ct. 567, 49 L. Ed. 956; Finance & Guaranty Co. v. Oppenhimer, 276 U. S. 10, 48 S. Ct. 209, 72 L. Ed. 443; Dunlop v. Mercer, 156 F. 545 (8 C. C. A.). But, if the future acquired goods were not included in the conditional contract of sale, then the transfer to the vendor on February 27, 1932, of the after-acquired property, would, under the facts as above established, constitute a preferential transfer and be voidable under the express provisions of section 60b of the Bankruptcy Act (11 USCA § 96 (b). Williams v. German-American Trust Co., 219 F. 507 (8 C. C. A.); Fischer v. Liberty Nat. Bank & Trust Co. (C. C. A.) 61 F.(2d) 757, 759.

The conditional sales contract is as follows:

"This Memorandum of an Agreement, Made and entered into this 10th day of January, A. D. 1929, Witnesseth:

"That A. Robinson of Huron, South Dakota, party of the first part, owner, hereby sells to A. E. Robinson and Mabel Glenn Robinson of Huron, South Dakota, parties of the second part, and said second parties hereby purchase, subject to all the terms and conditions hereinafter set forth, the following personal property, delivery and acceptance of which are hereby acknowledged by said purchaser, to-wit:

"The stock of goods, wares and merchandise, otherwise designated and known as shoe stock, located in that certain brick building on Lots Thirty-one (31) and Thirty-two (32) in Block Five (5), Original Town (now City) of Huron, South Dakota, at #20 Third St., S. W., and more particularly described in the inventory hereto attached and made a part hereof, as Exhibit 'A,' together with the goodwill of the business carried on at said place by the party of the first part under the trade name of Robinson Shoe Company, for the total time price of Twenty-five Thousand Dollars, evidenced by a certain non-negotiable promissory note for said sum, executed by said parties of the second part at the time of the execution of this contract, and payable to the order of the party of the first part, drawing interest from date at the rate of six per cent per annum, payable pursuant to the following terms and conditions:

"(1) Two Hundred Dollars ($200.00) on the first day of each and every month following the execution of the agreement and continuing for the period of sixty consecutive months, said payment to be applied as follows: To the payment of interest due to the date of said payment, and the balance to be applied on the principal debt. It is agreed and understood, however, that all available net profits, after replenishing the stock as hereinafter provided, above expenses, earned by the company in the course of the conduct of said business, shall be applied on said purchase price at any interest paying date, and that at the expiration of three years, at least Five Thousand Dollars must have been paid on the principal.

"(2) Fully Twelve Thousand Five Hundred Dollars shall be paid on the entire principal of the obligation, at the expiration of the period of sixty months aforesaid, and the balance of the principal shall be paid in cash, or secured in such manner as the party of the first part shall determine.

"(3) The title to said property shall not pass from the party of the first part to the parties of the second part until the said purchase price shall be fully paid.

"(4) The purchasers shall give to the seller their non-negotiable promissory note, as above described, not as payment for said property but as evidence of the amount they agreed to pay therefor.

"(5) The purchasers shall pay the taxes aforesaid on said above property, and keep the same free and clear of any and all taxes, assessments, liens and encumbrances.

"(6) The purchasers shall not transfer any interest in this contract or the property described therein or conveyed thereby, without the written consent of the seller, but sales of said merchandise in due course of business may be made by the purchasers, provided that the stock shall be from time to time replenished by the purchasers, and maintained at a value of not less than Twenty Thousand Dollars.

"(7) The purchaser, A. E. Robinson, shall take out business insurance on his life, in a reputable life insurance company, for Twenty Thousand Dollars, payable to a trustee, to-wit: The National Bank Investment Company, of Huron, South Dakota, which shall be held in escrow by said trustee as security for the performance of this contract, and in the event of the death of the purchaser, A. E. Robinson, said trustee is hereby authorized and directed to pay the seller the balance, if any, due on this contract, and thereupon to deliver to the surviving purchaser and heirs

of said A. E. Robinson, or if neither of said purchasers shall survive, then to the heirs of the second parties, this contract, together with such balance, if any, of the insurance money; and the said purchasers shall keep all premiums paid on said policy of insurance until this contract shall have been fully completed.

"(8) The purchasers shall conduct and carry on said business in the building owned by the seller, in which it is now located, and keep said building in as good condition and state of repair as it now is, reasonable wear and tear excepted, and shall at their expense keep said shoe stock insured against loss by fire and tornado, in a reputable fire insurance company, in an amount sufficient to protect the seller, the loss, if any, to be payable to the seller as his interest may appear; and shall pay to the seller the following rent for that part of said building occupied by the purchasers, to-wit: Two Hundred Dollars per month in advance, for the first year, and Two Hundred and Thirty-five Dollars per month in advance for the remaining four years covered by this contract.

"(9) On the first day of January and July of each year covered by this contract, the purchasers shall make a complete inventory of said shoe stock, and exhibit the same to the seller, accompanied by a complete statement of sales made, expenses and existing assets on hand, and liabilities outstanding. They shall also, on the first day of each and every month, render to the seller a statement of the business done during the preceding month, showing sales, cash on hand and cash in bank, accounts payable and accounts receivable.

"(10) In the event of a default by the purchasers in complying with the terms of payment as provided herein, or in any of the other conditions above set forth, the seller shall confer and advise with the purchasers and thereupon may demand the full payment of this contract, or such portion thereof as to make his investment secure; and in the event the purchasers fail within ten days after such demand to comply therewith, the seller may take immediate possession of said property and sell the same at public or private sale without further demand for performance, with or without notice to the purchasers, and with or without having said property at the place of sale, and upon such terms and in such manner as he may determine, and he shall have the right to bid therefor at any public sale thereof.

"(11) The said purchasers, and each of them, hereby acknowledge that at the time of the execution and delivery of the foregoing conditional sales contract, the seller delivered to them, and each of them, a full, true and complete copy thereof.

"(12) This contract shall be binding upon the parties hereto, their heirs, personal representatives, successors and assigns.

"In Witness Whereof, etc."

The appellant claims that, considering the contract in its entirety and especially the provisions that the net profits should be applied upon the purchase price, that the title of the property should not pass until the purchase price is fully paid, and especially paragraph No. 6, "The purchasers shall not transfer any interest in this contract or the property described therein or conveyed thereby, without the written consent of the seller, but sales of said merchandise in due course of business may be made by the purchasers, provided that the stock shall be from time to time replenished by the purchasers, and maintained at a value of not less than $20,000.00," show an intention of the parties to include after-acquired merchandise as security for the debt, and should be so construed by the court as a matter of law.

In construing a written contract, the court will carry out as far as possible the intention of the parties, but is bound by the intention as disclosed by the instrument executed between them. Albien v. Smith, 24 S. D. 203, 123 N. W. 675; Wilson v. Lewis, 63 Neb. 617, 88 N. W. 690; Patnott v. Simpson & Co. (C. C. A.) 35 F.(2d) 840. The courts may not add to a contract that which it does not contain nor add thereto that which subsequent events develop would have been advantageous to one of the parties. The parties to this suit agree that the instrument is a conditional sales contract and that the title to the goods sold remained in the seller. The writing does not by express terms transfer the title in after-acquired goods to the vendor nor provide a lien thereon as additional security for the debt.

The conclusion of the trial court that under the terms of this agreement the parties did not intend to add as additional security a lien on goods afterwards acquired is supported by the cases cited to us interpreting conditional sales contracts with reference to future acquired goods. Harding v. Lewenberg, 174 Mass. 394, 54 N. E. 870; Edwards v. Symons, 65 Mich. 348, 32 N. W. 796; Richardson Drug Co. v. Teasdall, 52 Neb. 698, 72 N. W. 1028; Loving Pub. Co. v. Johnson, 68 Tex. 273, 4 S. W. 532; Estrich on Installment and Conditional Sales, 289, 476.

In 55 Corpus Juris, at page 1213, is the following:

"A stipulation, in an agreement to sell a stock of goods, that the title to same, except such as may be sold in the course of trade, shall remain in the seller until the purchase price is fully paid, and that the buyer, by making fresh purchases, shall keep the stock equal to what it was at the time of sale, does not give the seller title to the goods so bought to replenish the stock."

In Harding v. Lewenberg, supra, wherein the contract provided substantially as in the case at bar, the court said:

"There were in the store, when the defendant took possession, in April, 1898, goods purchased by Dann to replenish the stock, amounting in value to $251.62, and the question is whether these passed to the defendant under the agreement in writing, so that he is not liable to the plaintiff for the conversion of them. The defendant contends that the true meaning of the agreement is that the after-acquired property was to become his as fast as purchased and put with the stock, and therefore, he having taken possession, that the case comes within the principle stated in Blanchard v. Cooke, 144 Mass. 207, 11 N. E. 83, and Bennett v. Bailey, 150 Mass. 257, 22 N. E. 916. There cannot be a transfer of title by bringing in goods in this way without a clear agreement to that effect. The writing contains no such agreement. It nowhere says that the defendant is to acquire any title under the instrument. It secures to him the ownership of the goods which he agrees to sell until they are paid for, except that portion of them which is sold by Dann in the regular course of his business in accordance with the agreement. It is silent in regard to the ownership of the property to be bought by Dann to keep up his stock. If it was the intention of the parties that the title to this property should pass to the defendant whenever it was put with the stock of goods, they failed to express it. A sufficient reason for the requirement that the stock should be kept up is found in the provision that the defendant was to receive his payment from the gross weekly sales. So long as Dann kept up the stock to its full value, the defendant might expect large and prompt payments; and when he failed to do this the defendant could take possession of his property which had not been sold."

Appellant relies upon a line of cases holding that provisions in a chattel mortgage "to keep the stock in its then present condition" as a matter of law show an intention to include goods purchased and subsequently added to the stock. Ayers, Weatherwax & Reid Co. v. Sundback, 5 S. D. 31, 58 N. W. 4; Albien v. Smith, 24 S. D. 203, 123 N. W. 675; Wilson v. Lewis, 63 Neb. 617, 88 N. W. 690; Madson v. Rutten, 16 N. D. 281, 113 N. W. 872, 13 L. R. A. (N. S.) 554; Cadwell v. Pray, 41 Mich. 307, 2 N. W. 52; Armstrong v. Ford, 10 Wash. 64, 38 P. 866; Kettenbach v. Walker, 32 Idaho, 544, 186 P. 912; In re Simpson (D. C.) 31 F.(2d) 317; Id. (C. C. A.) 35 F.(2d) 840.

In this connection the appellant calls our attention to the rule that, in the interpretation of a conditional sales contract, having to do with the transfer of property, the laws and decisions of the state of South Dakota control, Dooley v. Pease, 180 U. S. 126, 21 S. Ct. 329, 45 L. Ed. 457; Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 25 S. Ct. 567, 49 L. Ed. 956; and he claims that under the laws of South Dakota the provisions in chattel mortgages are to be interpreted the same as conditional sales contracts. This latter statement is based upon certain decisions of the Supreme Court of South Dakota discussing priority of liens in tax cases and interpreting statutes of the state of South Dakota with reference thereto. If such discussions had created any doubt as to that court preserving the distinctions between conditional sale contracts and chattel mortgages, it is set at rest by the recent decision of that court in General Motors Acceptance Corp. v. Whitfield (S. D.) 253 N. W. 450, 452. In the course of the opinion that court said:

"This state is committed to the view that a chattel mortgage is a lien only and passes no title. (Cases.) When the transaction is absolute sale and mortgage back, in contemplation of law the whole legal title and property right passes to the vendee, who, then, by the execution of the mortgage, creates a charge or lien thereon. * * *

"In the case of conditional sale, however, the situation is quite different. It is not a case where complete title, property, and ownership pass to the vendee and he creates a lien thereon. Legal title never passes out of the vendor until performance of the contract. * * * Conceding that by virtue of section 6759, R. C. 1919, all personal property owned by Bessler on January 1, 1931, or thereafter acquired was subject to a first lien in favor of the state for all delinquent personal property tax of Bessler, and conceding that on January 1, 1932, a lien likewise attached to all personal property of Bessler for his delin-

quent personal property tax of 1931, nevertheless such lien could not attach to property rights which had always belonged to appellant, with which appellant had never parted, and which Bessler did not then own and never had owned, although he might have a contract right to obtain them."

■ The distinction between the lien created by a chattel mortgage and the rights of a vendee under a conditional sale contract has always been well recognized by the law. In the case of a mortgage, the lien arises from an act of the mortgagor, while, in the case of conditional sale contracts, the title to the property is reserved by the vendor. In re Horwitz (D. C.) 32 F.(2d) 285; In re Farmers' Co-operative Co. (D. C.) 202 F. 1005, 1007.

From the above we could not say that the Supreme Court of South Dakota has held that chattel mortgages should be interpreted the same as conditional sale contracts to determine the intention of the parties as a matter of law by which we are bound.

Appellant also contends that the trial court should have found that the transfer of the after-acquired property on February 27, 1932, was a voluntary transfer and a payment of its value on the indebtedness of the vendee, and should be considered also as showing an intention of the parties that the conditional sale contract included after-acquired property. This latter contention is answered by the findings of fact of the trial court that the evidence did not establish such an intention.

■ The general rule of law is that, in the absence of fraud, a debtor may prefer one of his creditors to the exclusion of his other creditors. The statutes of South Dakota so expressly declare. Rev. Code S. D. 1919, § 2039. But such a rule is superseded by the acts of Congress in bankruptcy matters, and, as Judge Hand said in Fischer v. Liberty Nat. Bank & Trust Co., supra, referring to section 60b of the Bankruptcy Act:

"It is only because the statute by its fiat avoids the transaction, good as between the original parties, that the trustee has any standing at all."

The superiority of the bankruptcy rule prevents the case of Wilson v. Lewis, 63 Neb. 617, 88 N. W. 690, 691, from being the authority intended by the appellant. It is the only case involving a construction of a conditional sale having to do with after-acquired property submitted by the appellant. The

provisions of the conditional contract in that case were somewhat similar to the provisions in the conditional sale contract in the case at bar. The court, however, did not interpret the conditional sale contract as including future acquired property, but approved a submission to, and finding of fact by, the jury that the defendant in that case voluntarily surrendered the possession of the property to the plaintiff and thus became a valid payment. The Bankruptcy Act did not intervene.

■ The purpose of this suit is to set aside under the provisions of the Bankruptcy Act a conveyance made by the bankrupt while insolvent as preferential, as giving a greater percentage of payment to one creditor on the debts of the bankrupt than to others, and this law has universally been held to be equitable and salutary in enabling the bankruptcy courts to distribute the property of an insolvent in equal percentages of their debts to creditors of the same class.

The trial court also found that, if the conditional sale contract be construed as a chattel mortgage as to after-acquired property, the defendant failed to foreclose the same in the manner provided by law for the foreclosure of chattel mortgages, and, having taken the property without complying with the provisions of the South Dakota statutes with reference to foreclosure of chattel mortgages, the taking of the property by the vendor would be a wrongful conversion of such after-acquired property to his own use and thereby extinguished any lien he might have had on such after-acquired property by way of a chattel mortgage.

Section 1543, Rev. Code S. D. 1919, provides:

"The sale of any property on which there is a lien, in satisfaction of the claim secured thereby, or, in case of personal property, its wrongful conversion by the person holding the lien, extinguishes the lien thereon."

This section has been repeatedly construed by the Supreme Court of South Dakota. Mosteller v. Holborn, 21 S. D. 547, 114 N. W. 693; N. W. Port Huron Co. v. Iverson, 22 S. D. 314, 117 N. W. 372, 373, 133 Am. St. Rep. 920; Walklin v. Horswill, 24 S. D. 191, 123 N. W. 668; and see Citizens' Bank & Trust Co. v. Folsom, 281 F. 793 (8 C. C. A.).

We are abidingly satisfied that under the law the decision of the trial court was correct, and the judgment appealed from is affirmed.