## GEUDER, PAESCHKE & FREY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4201.

Circuit Court of Appeals, Seventh Circuit.
May 22, 1930.

As Modified on Denial of Rehearing June 18, 1930.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Walter W. Hammond, of Kenosha, Wis., for petitioner.

John G. Remey, of Washington, D. C., for respondent.

Before ALSCHULER, PAGE, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

Petitioner is a Wisconsin corporation organized in 1882, and since its organization has been engaged in the business of manufacturing tin and japanned sheet metal, galvanized ware, and metal stampings. Its books of accounts showed its invested capital and surplus, a part of which consisted of physical assets of buildings, machinery, tools and dies, factory fixtures and equipment, and automobiles. The company's investment in these assets was shown, and the accounts also showed depreciation reserves and sinking fund accounts representing the amount of accrued depreciation of these assets as determined by the company. In the years prior to 1918 petitioner charged off depreciation on these physical assets at varying rates. This was done for the reason that replacements of machinery parts, prompt and adequate repairs, and careful attention in various years arrested the ordinary depreciation, and kept the machinery in proper condition and prolonged its useful life. The cost of such repairs and replacements was not charged to capital investment, but, on the contrary, was charged to operating expense; and at the time petitioner made its return, and subsequently at the hearing, it was absolutely impossible to determine how much petitioner had expended for such repairs and replacements during the previous years of the company's existence.

The record of depreciation sustained on buildings was entered in an account called depreciation account; that of machinery, tools, dies, and other equipment, was entered in the sinking fund account. Mr. Frey, petitioner's secretary and treasurer, who had been connected with the company since 1882, fixed the rates of depreciation for the years 1918 and 1919, and also during the years previous to 1918. He also testified to petitioner's capital accounts for the assets in controversy and the depreciation reserves, and his figures are as follows:

| | Capital Account | Depreciation Reserve | Depreciation in Percentage of Asset Account |
|---|---|---|---|
| Buildings ........ | $ 511,148.37 | $ 38,249.09 | 7.5% |
| Machinery ....... | 311,730.32 | 88,347.01 | 28.3% |
| Tools and Dies.. | 199,864.77 | 89,060.83 | 44.6% |
| Factory, Fixtures and Equipment | 111,674.47 | 55,842.46 | 50.0% |
| Automobiles ..... | 4,784.60 | 1,342.33 | 25.9% |
| Totals ........ | $1,139,202.53 | $272,841.72 | 24.0% |

The witness Frey testified that in determining the rates of depreciation he entered sufficient amounts to cover the actual depreciation of the assets, and took into consideration the fact that renewals and replacements were charged as expenses; and that the above column of depreciation reserve reflects the true depreciation of the assets referred to therein. This evidence is also supported by the testimony of Mr. Harmon, auditor of petitioner, who has been associated with the company for over thirty years. It is also supported by the testimony of Manager Kempter, who has likewise been associated with the company for thirty years. It is likewise supported in a large measure by witness Roethe, a tax consultant, who made an audit of the books of the company for the period involved, so far as related to a determination of investment and depreciation.

It is uncontradicted that petitioner at all times endeavored to keep its plant and equipment in the best condition possible, and they were in good, efficient operating condition during the taxable years in question. The evidence further shows that there were some years in which no depreciation was taken on the buildings; however, the only testimony submitted is that the sound depreciated value

of these buildings was fully as great as the amount at which they were carried on petitioner's books. Witness Harmon testified positively that he considered the total depreciation on buildings, as shown by petitioner's figures, to be ample.

There was no evidence introduced on behalf of respondent except the Commissioner's computations, but respondent relied entirely on the legal presumption that the Commissioner's determination is prima facie correct and ·will stand unless overcome by competent evidence. In arriving at his figures of depreciation the Commissioner proceeded on the theory that ,the books and records of petitioner did not provide depreciation in the manner prescribed by the Department (which, without question, is the best method); therefore it must be presumed that depreciation was not provided for at all. He therefore arbitrarily determined that the invested capital and surplus in the assets referred to were less, by $259,184.25, than the actual capital and surplus as determined by the corporation and as shown on its books of account. He accomplishes this result, in effect, by saying that he allows taxpayer to take depreciation at certain percentages, which he calls permissible rates of depreciation. These percentages of depreciation from 1898 to 1917, inclusive, were applied by Commissioner regardless of petitioner's contention that it had adequately provided for depreciation by renewals and replacements· and proper maintenance of its assets, the expense of which was charged to operating expense, thereby reducing its surplus as effectually as a charge to a depreciation reserve would do. The computation began with 1898, because the company's records for earlier years were not available. The Commissioner, for example, applied a straight rate of 5 per cent. as the rate of depreciation on machinery, on the assumption that machinery would be worn out, exhausted, and useless at the end of twenty years. Theoretically this is quite a safe procedure in the absence of better evidence; but in this particular case there were machines that had been in use as long as forty-five years and were still rendering proper service, due to keeping them in good repair and promptly replacing all broken parts, and making such renewals as were necessary. This fact proves conclusively that no rule or rate can in all instances accurately measure depreciation. While it may form a safe basis for a prima facie case, it must give way to the facts in each particular case if those facts

are presented and are inconsistent with the rate.

Previous to the enactment providing for income tax, the necessity for detailed records of depreciation was not so apparent as now, and they were not kept in such manner as to be fully informative. Since the enactment many taxpayers have learned this, and have been greatly benefited thereby, so far as the future is concerned. We think this fact merits consideration, and it has generously received consideration at the hands of the United States Board of Tax Appeals.

In the case of Appeal of Cleveland Home Brewing Co., 1 B. T. A. 87, the Board used the following language:

"Depreciation * * * is a question of fact. Congress has allowed taxpayers 'a reasonable allowance for * * * wear and tear of property used in the trade or business' as a deduction from income, to make whole their capital investments before levying a tax upon that income. The Commissioner in this case asks us to accept a readjustment of taxpayer's invested capital upon a mere assumption that the property of *this taxpayer* was reasonably depreciable at certain arbitrary rates and in equal annual amounts over a period of 11 *completed* years. No evidence is offered that the alleged depreciation has actually occurred. None is even offered that property of the kind here in question usually deteriorates at approximately the rates used in the computations of the examining agent. Upon the record so made, we must sustain the position of the taxpayer."

In the case of Kansas Milling Co., 3 B. T. A. 709, the Board used the following language:

"The evidence before us indicates that at January 1, 1917, the taxpayer had accrued on its books a reserve for depreciation in the sum of $19,324.19; that, in addition to this reserve, the taxpayer from·1907 to the' close of 1916, had charged as current operating expense certain capital expenditures in lieu of charging off depreciation, specifically as such, annually at uniform rates; that of the capital expenditures charged to operating expense the revenue agent was able to identify items totaling $47,172.69, and this amount the Commissioner restored to the asset accounts and to invested capital; and that, by the application of a mathematical formula to property costs, based upon the straight-line theory of depreciation, going back to the date of taxpayer's organization, the Commissioner has determined that the

reserve for depreciation at the beginning of the taxable year 1917 should be stated in the sum of $98,681.59.

"We can not approve the Commissioner's action in this respect. It appears from the facts that, from 1907 to the end of 1916, the taxpayer took depreciation upon its books as such in the amount of $19,324.19, and in addition thereto expended at least the amount of $47,172.69 in betterments and additions which were not capitalized. The question here involved is the determination of the invested capital of this taxpayer as of January 1, 1917. For that purpose the Commissioner has, on the one hand, added the above amount of $47,172.69 to capital items, and, on the other hand, has applied straight-line depreciation to the taxpayer's assets from 1907 to 1917. The facts are thus not substantially different from the facts in the Appeal of Cleveland Home Brewing Co., 1 B. T. A. 87. * * *

"The evidence before us discloses that the amount charged off its books by the taxpayer against its physical assets, both in the reserve and in capital expenditures charged to expense, was substantial. There is no evidence before us that such assets suffered any greater depreciation than the amount so charged off, or that the Commissioner's computation is more nearly correct than the taxpayer's. In these circumstances, we are of the opinion that no change should be made either in the asset accounts or in the depreciation reserve as they stand in the taxpayer's books as of January 1, 1917."

In the case of Marigold Garden Co. and Randolph Hotel v. Commissioner, 6 B. T. A. 368, decided March 2, 1927, the Board used the following language:

"From 1897 to 1915, during which period the books of the company were kept by one of its executive officers, the company had not accounted for depreciation at constant rates, nor according to any particular method of calculation. Such amounts were charged off as in the well considered opinion of its officers were sufficient to take care of the wear, tear and exhaustion actually sustained. They also charged to expense certain items which might properly have been capitalized. After 1915, when the books were kept under the supervision and direction of certified public accountants, such depreciation was charged off as the accountants advised was proper. The appraisal of 1916 indicated a higher value than that shown on the books. There is no evidence other than the result of a straight-line calculation to show that the

depreciation on the books did not represent the actual depreciation sustained or that the property of the company had a value or was in a condition other than that shown by its books. The issue is controlled by Cleveland Home Brewing Co., 1 B. T. A. 87; Russell Milling Co., 1 B. T. A. 194, and Rub-No-More Co., 1 B. T. A. 228, and the Commissioner's action in reducing the earned surplus on account of alleged inadequate depreciation charged off in prior years is in error."

The Commissioner calls our attention to the decisions of the Board in Appeal of City National Bank, 2 B. T. A. 623, and Appeal of Union Terminal Cold Storage Co., 4 B. T. A. 264, and contends that these cases subsequently considered and distinguished the appeals of Cleveland Home Brewing Co., Russell Milling Co., and Rub-No-More Co., supra. These cases merely distinguish the facts from those in the older cases, and a reading of these two later cases cited by the Commissioner shows that the facts are quite dissimilar; in fact, in the Appeal of Union Terminal Cold Storage Co. there was no evidence whatever introduced to show that taxpayer had ever charged off any depreciation. In the instant case the officers of taxpayer, who have been closely and continuously associated with it for thirty years or more, are positive in their testimony that the amount of depreciation sustained during the preceding years is identical with the amount charged off by taxpayer. This we regard sufficient, under the decisions of the Board from which we have quoted, to overcome the prima facie case made by the Commissioner's finding. This position is fully supported by Haugh & Keenan Storage & Transfer Co. v. Heiner (D. C.) 20 F.(2d) 921.

■ Appellant further contends that the entire deficiency claim for the year 1918 is barred by the Statute of Limitations, which provides that a deficiency tax must be determined and assessed within five years after taxpayer's return was due or was made. Revenue Act 1918, c. 18, 40 Stat. 1082, 1083, § 250 (d). Petitioner's return for the year 1918 was returned June 13, 1919, and the deficiency tax was determined and assessed August 4, 1925. There being no waiver, the claim comes clearly within the statute and is barred. Russell et al. v. United States, 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255; Dobbins v. Commissioner (C. C. A.) 31 F. (2d) 935. It is not only barred, but it was extinguished by section 1106 (a), Revenue

Act 1926, 44 Stat. 113 (26 USCA § 1249 note).

These facts were called to the attention of the court and it refused taxpayer the right to file an answer setting up the Statute of Limitations. Although his request was not made until after submission, it was made previous to the Board's order herein, and shortly following an order of the Board in National Products Co. v. Commissioner, 7 B. T. A. 632, which construed section 278 (d), Revenue Act of 1924 (26 USCA § 1061 note), as not extending the period of limitation provided in 40 Stat. 1083, supra, in cases such as the instant one.

Under the circumstances we think the application of the taxpayer for leave to file a plea of the Statute of Limitations should have been granted. Alameda Park Co. v. Lucas, Commissioner, 59 App. D. C. 175, 37 F.(2d) 805.

The order of the Board of Tax Appeals is reversed, and the cause is remanded for further proceeding not inconsistent with this opinion.