GULF STATES STEEL CO. et al. v. UNITED STATES.

No. 6325.

Circuit Court of Appeals, Fifth Circuit.
Feb. 19, 1932.

SIBLEY, Circuit Judge, dissenting.

Augustus Benners of Birmingham, Ala., and John W. Drye, Jr., of New York City, for appellants.

John B. Isbell, U. S. Atty., of Fort Payne, Ala., and C. C. McCormick, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for the United States.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is an appeal from a verdict and judgment that appellants had breached the conditions of and were liable on a bond executed September 9, 1925, to stay the collection, pending disposition of a claim for its abatement, of an additional assessment made by the commissioner in April 1921, for the year 1917. This bond, conditioned "that the principal or surety, or both, shall pay to the Collector so much of the amount of the claim as is not abated, together with penalties and interest thereon, as provided by law," recited the assessment of the additional tax, the filing of claim for abatement, the prior execution of a bond by the Gulf States Steel Company securing the payment "of so much of the additional assessment, penalties and interest as is not abated," and the deposit of Liberty Loan bonds as security.

The appeal presents the single question whether the finding by the Board of Tax Appeals on a petition for redetermination of deficiency filed after the commissioner had rejected the taxpayer's claim for abatement, that "there is no deficiency for the year 1917, because the statutes of limitation have run against the collection," abated the additional assessment within the meaning of the bond.

The District Judge concluded that it did not. He was of the opinion that the finding of the board had the effect not at all of abating any part of the tax, but of formally declaring that, because barred, it was not collectible. He was of the opinion that the finding of the board that limitation had run added nothing to the fact that it had, and that the case was ruled by United States v. John Barth Co., 279 U. S. 370, 49 S. Ct. 366, 73 L. Ed. 743. We are of the same opinion. That case held: "The making of the bond gives the United States a cause of action separate and distinct from an action to collect taxes which it already had. * * * The postponement of the collection of the taxes returned was a waiver of the statutory limitation of five years that would have applied had the voluntary return of the taxpayer stood, and no bond been given." Page 375 of 279 U. S., 49 S. Ct. 366, 367. And that: "The object of the bond was not only to prevent the immediate collection of the tax but also to prevent the running of time against the government. The taxpayer has obtained his object by the use of the bond, and he should not object to making good the contract by which he obtained the delay he sought." Page 376 of 279 U. S., 49 S. Ct. 366, 367.

Appellants insist that by the different conditions in the bonds there is a great gulf fixed between this and the Barth Case. That in the Barth Case the agreement, which was to pay "any part of such tax found by the Commissioner to be due," was breached because the commissioner did find an amount due, and there was no recourse from his

finding; that the agreement in this case is to pay "so much of the amount of the claim as is not abated"; and that it was all abated. We think the language of the two bonds is, in legal effect, the same; the only difference is that one speaks affirmatively, the other negatively. The Barth bond was in words an agreement to pay what was found to be due. The bond here was in effect the same, for it was an agreement to pay all but what was found not due. In the Barth Case a part only of the tax was found to be due; here it all was.

The commissioner considered and rejected all claims set up against the assessment. Finding it to have been duly made, he was without power to, and he did not, abate any of it. The board, under the jurisdiction which is the only one it has under the statutes to redetermine deficiencies asserted by the commissioner (Appeal of Morefield, 4 B. T. A. 394), was at first petitioned to review the findings of the commissioner and to determine that the assessment had not, in whole or in part, been duly laid. If it had done so, that determination would, to the extent the assessment was found invalid, have resulted in an abatement of the tax. It did not, however, do this; instead, it confined its attention to and based its finding of no deficiency on the point raised in the amended petition filed March 4, 1927, that "the payment of the alleged deficiency had been extinguished by the running of the statutes of limitation, and that collection of such deficiency was barred." This is not a finding that the tax or any part of it should be abated. It does not abate any part of it. It is but a formal judgment that the tax, as tax, is, because the bar of limitation has fallen, not collectible. Since it is this and no more, it has the effect upon the suit on the bond here, and no more, that the fact found in the Barth Case and the legal conclusion there announced, that time had run against the tax and that it was therefore uncollectible, had on the suit on the bond there.

A brief statement of the facts of this case which are undisputed, and as brief a consideration of the meaning of "abated" used in the bond, will, we think, suffice to show the correctness of these conclusions.

The Gulf States Steel Company, hereafter called "the company," made its return of assessment for 1917 on March 22, 1918. In April, 1921, the commissioner made the additional assessment of $153,815.30 which furnishes the spring of the controversy here. On May 6, 1921, the company on Form 47, revised April, 1918, filed *claim for abatement taxes erroneously and illegally assessed.* This claim demanded the abatement' of the additional assessment on the ground "that said additional assessment is unwarranted and illegal" in the respects that it incorrectly computed invested capital, allowed a deduction of only 7 per cent. instead of 8 per cent., and disallowed as invested capital, certain interest paid." On March 13, nine days before the five years after the return was made had run, upon demand of the tax collector for payment, the company and the American Surety Company executed a bond in favor of the collector in the sum of $175,350 conditioned that the contractors "will indemnify the Collector against all loss, costs, damage and expense to which he may be put by reason of having allowed the Gulf States Steel Company to withhold the payment to him of the sum of $153,815.30 claimed due by it under the War Revenue Act of 1917 pending the filing of additional facts and information in support of claim for abatement of said amount heretofore filed by it." On April 23, 1925, the company executed an agreement which, after reciting that it and the American Surety Company had executed the bond above in support "of a claim for abatement of assessment, penalties and interest," and that it was desirous of relieving the above-bound surety and further securing the payment of any amount due, pledged with the collector $200,000 of Liberty bonds, and obligated the undersigned "to pay to the Collector such amount of the claim as is not abated, together with all costs, damages, penalties and interest." On September 9, 1925, appellants executed the bond sued on here, which after reciting the assessment of the additional income tax for the year 1917, that a claim for the abatement of the additional tax was filed with the collector, the execution of the bond of April 3, 1925, and the deposit in lieu of surety of Liberty bonds, obligated the collector to release and surrender the Liberty bonds to the company, and the appellants to "pay to the Collector so much of the amount of the claim as is not abated, together with penalties and interest thereon."

On May 12, 1926, the claim for abatement was rejected by the commissioner. The company, notified that it had sixty days within which to file a petition with the Board of Tax Appeals for a redetermination of the deficiency assessment, filed its petition attacking the assessment as not duly laid. In July, 1928, the board disposed of the matter on the plea of limitation set up in the amend-

ed petition. It found that "the collection of the deficiency, if any, in income and excess profits taxes for the year 1917 is barred by the statutes of limitation, and there is no deficiency for that year."

Appellants, taking their definition of "abate" from Webster, "7 Law. (a) To bring entirely down or demolish; to put an end to; to do away with, as to abate a nuisance; to abate an action. (b) To nullify; to make void," declare that that is what has occurred here. The board has demolished and done away with the tax, therefore it has abated it.

We think appellants' erroneous view of this case springs from the error into which they have fallen here, of giving to the word "abate" the meaning generally attached to it in legal proceedings of a *quashal*, a meaning which in its context and as applied to the subject-matter dealt with here, it does not have. Carrying always the general meaning of "to reduce; lessen, diminish," the word "abate" has many shades of meaning, both in general usage and in law. It is a technical word applicable to and used in many relations, and like all such words, it takes its color and content from the context of the subject-matter with which it deals. Webster's International Dictionary; Bouv. Law Dict. (Rawles 3d Rev.) vol. 1, p. 6. As applied to taxation, the subject with which this bond is precisely concerned, it has and has long had, a clear and definite meaning.

"An abatement supposes the assessment not duly made. If the tax be wholly abated, it is as if no assessment had been made; and if the tax be partially abated, and the residue paid, then all that has been duly assessed has been paid;" Billerica v. Chelmsford, 10 Mass. 396.

"It presupposes some error or mistake in the assessment, and is to be made on the application of the party aggrieved, who has been assessed beyond his due proportion. * * * It is an authority to the assessors, to amend an erroneous assessment; and when such assessment is made, it is the diminished and corrected tax, and not the original erroneous one, which the law considers to be the tax duly assessed." Inhabitants of Shrewsbury v. Inhabitants of Salem, 19 Pick. (Mass.) 390.

This is the nature and position of proceedings in abatement of internal revenue taxes. They assume, indeed the forms used declare, that the taxes claimed have been illegally and erroneously assessed. They seek in advance of compulsory payment to have this determined and the assessment amended. They seek, they expect, no relief, except that which flows from a finding that the assessment has in whole or in part, not been duly made. They are not appropriate to, they do not present, matters of defense to the collection of the tax. They have no force in themselves to defend or stay it. They do go, however, to the very root of the assessment, denying that it has been duly made, and seeking its amendment. The filing of such claims though diminishing under the Revenue Acts of 1921 and 1924, and practically nonexistent under those of 1926 and 1928, has long been a familiar practice in connection with the collection of income taxes. Montgomery on Income Tax Procedure, p. 268 et seq.; Holmes, Federal Taxes, (6th Ed.) §§ 806, 816, 817, 907, and 908. It has had no function, no effect, except to stay collection while the correctness of the assessment is being re-examined, in order to save the government and taxpayer alike from the nuisance of having to pay a tax, erroneously assessed, only to recover it back again by suit. In jeopardy cases, and in many others where abatement claims like the one in question here have been filed, bonds have been given. Holmes, Federal Taxes (6th Ed.) § 801. Neither the filing of the claim nor the giving of the bond prevents time from running against the collection of the tax as such, nor do they preserve any remedy which but for the bar, might be available to collect the tax. Bowers v. N. Y. & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676; Russell v. U. S., 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255. The pendency of such claim did not prevent the collector from proceeding with the collection of the tax, or the taxpayer from paying the tax and thereafter in a suit for its return, raising the question not only as to the amount of tax due, but as to the bar of time. Graham v. Du Pont, 262 U. S. 257, 43 S. Ct. 567, 67 L. Ed. 965. The giving of the bond, however, did create a new right in the government upon which, wholly apart from the tax, it may sue. U. S. v. John Barth Co., supra. It is upon this contract right, and not for the tax, that the government now sues.

The record shows not only no finding that the assessment referred to in the bond was illegal or erroneously laid, but an affirmative finding by the commissioner not reversed by the board, that it was not. Defendants are liable on their bond.

The judgment is affirmed.

SIBLEY, Circuit Judge (dissenting).

While I think the taxpayer, Gulf States Steel Company, is liable on the first bond given, it and National Surety Company, which signed the third bond only, are not liable on that bond. The surety on the first bond was released in consideration of the signing of the second, but the first bond was not surrendered but held against the principal, and the second expressly states that it was to "further secure the payment of the amount found to be due the United States." The third bond does not mention the first at all and does not supersede it. The first bond is conditioned "that the Gulf States Steel Company will indemnify the Collector or his successor in office against all loss, cost, damage and expense to which he may be put by reason of having allowed the said Company to withhold payment to him as such Collector of the named tax pending the filing of additional facts and information in support of a claim for abatement of said tax heretofore filed by it." It having been established that by reason of this delay the collector lost the entire tax, he is by the plain words of this bond entitled to indemnification under it.

As concerns the taxpayer there is a rough justice in saying that since for its benefit the Liberty bonds were put in the place of the liability of the surety on the first bond, and the liability of the surety on the third bond was put in the place of the Liberty bonds, therefore the third bond should stand for the same purposes as the first. But this is neither accurate nor right as to the National Surety Company. Its relation to the United States is purely that of surety for another, and its obligation is therefore one of strict law and measured solely by the bond it signed, fairly interpreted. This bond makes no reference to the first bond, whose terms may have been wholly unknown. It is for a different penalty, and given not to procure delay but the release of the Liberty bonds belonging to the taxpayer. It was not intended to express the same obligation that the first bond did, because its condition is wholly different from that of the first bond. After mentioning the assessed additional tax and the pending claim for abatement, and the giving of the second bond secured by the Liberty bonds which were to be surrendered, it binds the surety "to pay to said Collector so much of the amount of the claim as is not abated, together with penalties and interest thereon as provided by law." The question is: What do these words fairly mean when used in this connection in 1925? This is a voluntary bond, not taken in pursuance of any statute, but it happens to be in the language provided in the Revenue Act of 1924, § 279 (a), 26 USCA § 1063 note, for bonds given to stay jeopardy assessments. Its language also is substantially that prescribed by Revenue Act of 1928, § 273 (f), 26 USCA § 2273, (f), and is likely to be used in any bond given in connection with a claim for abatement, and its proper construction is important. The case of United States v. John Barth Co., 279 U. S. 370, 49 S. Ct. 366, 367, 73 L. Ed. 743, is not controlling. That case settled that the bar of limitation falling upon a tax after the giving of a bond made to obtain delay does not affect the contractual liability on the bond. It was said of the statutory bond there involved: "The object of the bond was not only to prevent the immediate collection of the tax, but also to prevent the running of time against the government. The taxpayer has obtained his object by the use of the bond, and he should not object to making good the contract by which he obtained the delay he sought." This language applies to the first bond in this case, which was given to obtain and did obtain the delay which ripened the limitation. Had the condition of that bond been less aptly worded and more like that of the third bond, I should be prepared to hold that the makers of it were estopped to defeat their bond on account of the very thing they were to obtain by giving it. Such could not be the fair intention of the parties. But the third bond was given two years and six months after the limitation bar had occurred. It does not stipulate for any delay, and if any was had on the faith of it the delay is amply compensated by the penalties and interest promised to be paid. Moreover, the surety on it is not refusing to make good his contract, but only asking that it be enforced according to its terms. The promise is to pay what is not abated. I do not regard as important the language quoted in the majority opinion from Inhabitants of Shrewsbury v. Inhabitants of Salem, 19 Pick. (Mass.) 390, concerning the tax laws of Massachusetts a hundred years ago. The point in that case was whether a pauper could claim support from a township as having theretofore paid five years' taxes when in fact some of them had been forgiven him. No question of abatement by limitation was involved. If it be true that in Massachusetts jurisprudence abatement refers only to error or mistake in an assessment and not to remission of taxes, the contrary is true in the federal jurisprudence. In Rev. St. § 2984 and section 3221 (26 USCA § 151), the Secretary of the

Treasury was authorized in certain cases to remit taxes duly and properly assessed on imported merchandise or distilled liquors which were afterwards accidentally destroyed. In both sections the remission before payment, although not for any error in the assessment, is termed an abatement, and after payment a refund; and the Supreme Court uses the word "abate" in that meaning in United States v. Alexander, 110 U. S. 325, 4 S. Ct. 99, 28 L. Ed. 166. A tax may therefore properly be said to be abated not only for errors and mistakes in its assessment, but for matters arising afterwards and before its collection. Limitation, whether occurring before or after assessment, was not known until recently as a ground for abatement because limitation did not exist. It was first provided as to assessing deficiencies in income taxes by requiring error to be discovered within three years. A claim for abatement with this limitation as its ground was involved in Graham v. Du Pont, 262 U. S. 234, 43 S. Ct. 567, 67 L. Ed. 965, and apparently filed so early as 1920. The Revenue Act of 1924 established the Board of Tax Appeals as a part of the machinery for assessing deficiencies and correcting assessments theretofore made. Among its earliest decisions is that of National Refining Co., 1 B. T. A. 236, 239, decided Dec. 23rd, 1924, holding that the limitations of the acts of 1918 and 1924 must be noticed in redetermining deficiencies. It was said: "Nowhere does the act contain any limitation on the Board as to what it may consider in determining whether or not a deficiency in tax exists. There is no restriction on the taxpayers' asserting in his appeal * * * that such tax is in violation of the Constitution, in violation of the provisions of any of the revenue acts, or illegal for any other reason. There is no more cause to prevent it pleading section 277 (a) (2) of the Revenue Act of 1924 [26 USCA § 1057 note] as a reason why a deficiency should not be determined against it than there is to deny it the right to plead any other section of the Act. * * * It appears to be clearly evident that the plea of limitation raises a distinct question as to the liability of the taxpayer for the tax.' It is also evident that Congress intended this Board to determine any liability and any taxpayer appealing to it regarding a deficiency imposed prior to payment of the tax." The ruling was repeated in John W. Collinson, 1 B. T. A. 561, and has been adhered to ever since. Those cases related to determinations made before assessment, but the principle was applied to this very claim

for abatement where assessment had been made before notice under the old practice. Gulf States Steel Co. v. Commissioner, 12 B. T. A. 1244. It is worthy of note that Revenue Act of 1928, § 273 (f), 26 USCA 2273 (f), speaks of any adverse decision of the Board of Tax Appeals as one abating a tax. Its decision is the final judgment of the executive department upon an assessment whether contemplated or under review, superseding and controlling that of the commissioner. 26 USCA § 1048a. When this bond, therefore, was given, limitation as well as error in the assessment was a ground for abating before payment a claim for taxes that was recognized by the Tax Department of the government. When the bond referred to a pending claim for abatement and promised payment of such sum as is not abated, it had plain reference to the final action by the Tax Department which included action by the Board of Tax Appeals on that claim for abatement. It is true that limitation was not at that time named in the claim as a ground for abatement, but it existed and might be added by amendment. Limitation must be considered if urged at any time before the final decision of the board. Alameda Park Co. v. Lucas, 59 App. D. C. 175, 37 F.(2d) 805; Geuder, Paeschke & Frey Co. v. Commissioner (C. C. A.) 41 F.(2d) 308; Enameled Metals Co. v. Commissioner (C. C. A.) 42 F.(2d) 213; Excelsior Motor Mfg. & Supply Co. v. Commissioner (C. C. A.) 43 F.(2d) 968. When the validity of this ground for abatement was established by the decision on February 21st, 1927, in Bowers v. New York & Albany Lit. Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676, there was no estoppel against and no impropriety in urging it. The Board of Tax Appeals so held, and abated the whole deficiency assessment because of limitation, declining to pass on the other grounds urged for abatement. No part of the tax claim remained unabated, so that there is nothing to be paid under the terms of the bond. The distinction to be taken is between a limitation which ripens after the giving of the bond by reason of delay obtained through the bond, and a limitation which ripened before. The former because of estoppel cannot be taken advantage of to defeat a bond worded like this one, but the latter may. A different ruling forfeits the defense of limitation already accrued on giving the statutory bonds above referred to. The taxing department of the government by a decision on the ground of limitation and a refusal to decide the other grounds cannot deprive this surety of the

benefit that might have resulted from a consideration of the latter. That department in the regular exercise of its functions having completely abated the deficiency claimed because of a limitation antedating the bond, nothing ought to be exacted under its promise to pay such amount as is not abated. I express no opinion as to whether the present pleadings suffice to assert the liability of the taxpayer under its first bond, but I dissent from the judgment upholding liability of principal and surety under the third bond.