## JOHNSON v. IGLEHEART BROS., Inc.
### No. 6277.

Circuit Court of Appeals, Seventh Circuit.

Feb. 11, 1938.

Rehearing Denied March 9, 1938.

LINDLEY, District Judge, dissenting.

———◆———

Emra H. Ireland, of Evansville, Ind., for appellant.

Joseph H. Iglehart, of Evansville, Ind. (George S. Herr and O. McPeak, both of New York City, of counsel), for appellee.

Before EVANS and MAJOR, Circuit Judges and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a judgment of the District Court sustaining defendant's demurrer to paragraphs 1 and 2 of plaintiff's complaint. The action is one at law commenced March 2, 1936, based upon seven written contracts to recover the

sum of $26,910 representing a part of the contract price of flour purchased by plaintiff from defendant and claimed by the plaintiff to represent an amount paid by him to the defendant to cover processing tax imposed upon the latter under the provisions of the Agricultural Adjustment Act, as amended, U.S.C.A. title 7, § 601 et seq. The contracts declared upon are referred to as Exhibits A to G, inclusive. The exhibits are attached to and made a part of the complaint; Exhibits A, B, and C, referred to as Group I, being attached to paragraph 1 of the complaint, and Exhibits D, E, F, and G, referred to as Group II, attached to paragraph 2 of the complaint. In the first paragraph, it is alleged that the plaintiff purchased flour on September 22, 1933, April 13, 1934, and July 26, 1934, from defendant in quantities and at contract prices as specified in the contracts attached thereto; and in the second paragraph it is alleged that the plaintiff, on August 14, 1934, October 27, 1934, April 29, 1935, and June 5, 1935, purchased flour in quantities and at prices specified in copies of the contracts attached thereto.

In each paragraph of the complaint, it is alleged that the plaintiff is engaged in the buying and selling of grain and flour and other mill products; that the defendant is engaged in the milling business; that when contracts were entered into the Agricultural Adjustment Act was in force and effect under the authority of which a processing tax was fixed by the Secretary of Agriculture; that after the contracts were executed, the plaintiff received and paid for all the flour mentioned in said contracts, that the said act was declared unconstitutional by the Supreme Court of the United States, and that the defendant refused to repay the sum of $8,970, being the amount of the tax on the flour purchased under the contracts in Group I and refused to repay $17,940, being the tax imposed under the contracts referred to in Group II. The complaint also contains the inconsistent allegations, both that the processing taxes were paid by the defendant and that the defendant failed and refused to pay said taxes to the United States Government.

All the contracts in question, executed at various times from September 22, 1933, to June 5, 1935, set forth the number of barrels of flour purchased, the dates when the same were to be delivered and the contract price, ranging from $4.95 to $5.90 per barrel, no mention being made of the amount of the processing tax included in the purchase price.

Inasmuch as this controversy revolves largely around the provisions in the contracts with reference to the processing taxes, there must necessarily be a construction of the language employed by the parties with reference thereto. The contracts referred to in Group I contained identical phraseology in this respect and so do the contracts referred to in Group II, but there is found some difference in the language employed in this respect between the two groups of contracts. The contracts in both groups provide: "It is understood and agreed that there are no conditions, except as specified herein; that there shall be no assignment; and that no agent has authority to change the terms of this contract."

The contracts of Group I contain only the following provision with reference to processing taxes:

"Taxes: The price named in this contract includes all taxes as at present determined by the Secretary of Agriculture by virtue of authority vested in him by the Agricultural Adjustment Act of the United States. Under said Agricultural Adjustment Act it is provided that said taxes may be changed from time to time, and it is, therefore, understood and agreed that if, after the date of this contract, said present taxes are increased before delivery to the buyer of any shipment or shipments herein contracted to be made, then in such event the amount of such increase or increases shall be added to the price named in this contract, and shall be paid by the buyer to the seller, and correspondingly, if any reduction or reductions are hereafter made in said present taxes affecting the price named in this contract, then the seller agrees to adjust the price named herein and to allow to the buyer the amount of such reduction or reductions."

The contracts of Group II contained a similar provision concerning taxes, the essential difference being the provision where such taxes are decreased, which is as follows: "If any tax included in the price hereof shall be decreased or abated, then, in that event, said decrease or abatement shall be deducted from the price hereof."

In discussing the question with which we are presented, it might be well for us to first determine what is admitted by the demurrer under the circumstances

here existing, but before so doing, we shall dispose of a question which defendant insists is determinative of plaintiff's right to recover. As heretofore pointed out, the complaint contains the inconsistent allegations both that the processing taxes were paid by the defendant and also that he failed and refused to pay said taxes to the United States Government. It is obvious that such allegations are contradictory and that both could not be true. No doubt, the pleader, in place of the allegation "which taxes were paid by the defendant" intended to allege "which taxes were to be paid by the defendant," and that the words "to be" were unintentionally omitted, due perhaps to a typographical error. It was the duty of the defendant to specifically point out, in support of its demurrer, wherein the complaint was deficient. U.S.C.A. title 28, § 777. This, it failed to do. If the practice in this respect had been complied with and plaintiff advised of the inconsistent allegation, he would have had an opportunity to amend his complaint. The defendant having failed so to do, we are of the opinion it is in no position here to maintain such contention. At any rate, we are not willing to base our decision upon such reasoning.

Concerning the effect of the demurrer, it seems to be the position of plaintiff that the defendant, by making such attack upon the complaint, admits the allegations thereof, or at any rate, such allegations as are well pleaded. Generally, of course, that is the case, but it seems where an action is based upon a written contract, a copy of which is attached to the complaint, a somewhat different effect is had, or perhaps it would be more accurate to say that the court must look to the contract in determining what allegations of the complaint are properly pleaded.

In Inter-State Land Co. v. Maxwell Land Co., 139 U.S. 569, on page 577, 11 S.Ct. 656, 659, 35 L.Ed. 278, the court said: "The proposition of counsel for appellant that the effect of the demurrer is an admission pro hac vice that the Interstate Land Company has the title in fee to the lands in dispute needs only the single reply that a demurrer admits facts well pleaded, but does not admit that the construction of a written instrument set forth in the bill is the true one, or that its legal effect is contrary to that which its language imports.

The very object of a demurrer in such case is to submit the question presented by the instrument as a matter of law for the determination of the court. Story, Eq. Pl. (9th Ed.) § 452, note a; Dillon v. Barnard, 21 Wall. 430, 437 [22 L.Ed. 673]; United States v. Ames, 99 U.S. 35, 45 [25 L.Ed. 295]."

Also, in St. Louis, etc., Railroad Co. v. U. S., 267 U.S. 346, on page 349, 45 S.Ct. 245, 246, 69 L.Ed. 649, which was an action upon contract, the court in discussing the effect of a demurrer said: "The contention is that these allegations are admitted by the demurrer; and that for this and other reasons section 3 cannot properly be construed to apply to claims of the character of those sought to be recovered, because these 'did not arise out of the contract or because of anything contained in it.' The allegations in the petition as to the meaning, application and effect of section 3, being conclusions of law, are not admitted by the demurrer. [Cases cited.] The legal effect of the instrument remains that which its language imports."

It is at once apparent that the court must construe the contracts themselves, and that plaintiff's rights must be determined by the terms thereof rather than by the allegations of his complaint. To enumerate and comment upon various allegations of the complaint which merely represent the conclusion of the pleader, being the construction which he places upon the contracts, would unduly prolong this opinion. There is one allegation, however, which, because of its pertinency, we quote as follows: "That by so specifically including said processing tax in the respective prices paid by plaintiff to the defendant in the respective purchases of said flour under said contracts, the defendant promised to restore to plaintiff the amounts of said processing tax in the event of the annulment of said tax or defendant's failure to pay said amount of processing taxes to the Government as required."

It will be noted that the contracts make express provision for the protection of the seller in the event the processing taxes are increased and for the protection of the buyer in case said taxes are reduced, decreased or abated, and that it no provision as to what shall happen "in the event of the annulment of said tax or defendant's failure to pay said amount of processing tax to the Government." Under the authorities heretofore cited, this

allegation is merely a conclusion of the pleader and represents his interpretation of the provision above quoted. The truth of such allegation was not admitted by the demurrer.

Section 9 of the Agricultural Adjustment Act, as amended, 7 U.S.C.A. § 609, authorized the Secretary of Agriculture to increase or decrease the processing tax within the limits prescribed, while subsection (a) of section 15, as amended, 7 U.S.C.A. § 615(a), authorized the Secretary of the Treasury to abate or refund any processing tax under prescribed limitations. It will be noted from the language of the act that the words used to denote or describe a change in the tax are "abate," "refund," "increase," and "decrease." It will also be noted that the words used in the contracts are "increase," "reduce," "decrease," and "abate," which indicate to our mind that the parties intended to protect themselves against the contingencies provided for in the Act and not against the contingency which resulted when the Act was declared unconstitutional.

They expressly provided for the payment by plaintiff of the taxes as then existing. They also protected each other against an increase or decrease in such tax. The contingency which arose by the tax being declared invalid was covered by the general provision, "The price named in this contract includes all taxes as at the date hereof proclaimed by the Secretary of Agriculture." This was a recognition of the obligation on plaintiff's part to pay the process tax which was included in the purchase price. The rest of the paragraph applied only in case of an increase or a reduction in such tax.

The provision respecting Group II is somewhat different. Obviously the expression "decrease or abatement" is more comprehensive than the words "reduction or reductions." The difference lies in the difference in meaning of the two words "reductions" and "abatements." In construing this clause, however, we cannot separate it from the rest of its context. The parties were clearly dealing with the application of the tax to future sales.

Construing "decrease or abatement" in connection with the paragraph wherein such words are found, we think it is clear that the parties merely contracted that if after the date of this contract there was a decrease or abatement (or increase or additional taxes) then the aforesaid provi-

sion took effect. *Thereafter the sales price would be reduced if there were a decrease or abatement of the tax.* The provision did not cover sales which took place before any change or abatement.

The argument that the agreement covered the contingency of the process tax being held invalid is somewhat impaired by the fact that another tax has been passed by Congress (the Windfall Tax) to take its place. If we step outside the strict letter of the contract to a consideration of what might be called the equities of the situation, it would appear harsh and illogical to hold that a sum equal to the tax must be returned to the plaintiff even though a valid substitute tax to the extent of 80 per cent. thereof should be subsequently imposed upon and paid by the defendant. This possibility furnishes added reason for construing the contract according to its language, giving to each word its proper meaning.

The parties to this contract dealt with the subject of taxes. In fact, they covered specifically the subject of process taxes. They provided against either *an increase* or *a decrease* in said process tax. They were selling and buying upon the express agreement that the buyer should pay *"all taxes as at present determined by the Secretary of Agriculture."* Then follows the further agreement "under said Agricultural Adjustment Act it is provided that said taxes may be changed from time to time." The case turns upon the construction of the words "reduction or reductions" in the class of goods designated in the pleadings as Group I and upon the meaning of the words "decrease or abatement" as applied to the purchase of goods designated Group II.

It is urged upon us, however, that notwithstanding the want of express language to cover the situation presented, the court should construe the contracts as containing an implied promise to refund to the plaintiff that part of the purchase price which went to make up the processing tax. In other words, we are asked, by construction, to afford the plaintiff protection against a contingency other than that which the parties themselves provided.

Defendant contends that there can be no implied contract where there is an express contract between the parties relating to the same subject matter, and omissions in a written contract can not be supplied by implication unless the implication results

from the language employed in the instrument or is indispensable to carry the intention of the parties into effect. Many authorities are cited in support of this contention.

In Hawkins v. United States, 96 U.S. 689, on page 697, 24 L.Ed. 607, the court said: "Implied promises or promises in law exist only when there is no express promise between the parties,—expressum facit cessare tacitum. Hence, says Chitty, a party cannot be bound by an implied promise, when he has made an express contract as to the same subject-matter; which is certainly sound law, unless the express contract has been rescinded or abandoned."

In Klebe et al., Copartners, Trading as L. Klebe & Company, v. United States, 263 U.S. 188, on page 192, 44 S.Ct. 58, 59, 68 L.Ed. 244, the court said: "A contract implied in fact is one inferred from the circumstances or acts of the parties; but an express contract speaks for itself and leaves no place for implications."

In Robinson v. Bowe, 8 Cir., 73 F.2d 238, on page 241, it is said: "In construing a written contract, the court will carry out as far as possible the intention of the parties, but is bound by the intention as disclosed by the instrument executed between them. Albien v. Smith, 24 S.D. 203, 123 N.W. 675; Wilson v. Lewis, 63 Neb. 617, 88 N.W. 690; Patnott v. Simpson & Co. (C.C.A.) 35 F.2d 840. The courts may not add to a contract that which it does not contain nor add thereto that which subsequent events develop would have been advantageous to one of the parties."

In Ruston Drilling Co. v. United States Fidelity & Guaranty Co., 8 Cir., 81 F.2d 943, on page 945 it is said:

"Judicial construction of a contract requires a determination of the meaning of the language used by the parties, and not ascertainment of some possible but unexpressed intent. Canadian National Ry. Co. v. George M. Jones Co. (C.C.A. 6) 27 F.2d 240, 242; Hunt v. Triplex Safety Glass Co. of North America, Inc. (C.C.A. 6) 60 F. 2d 92, 94. * * *

"This because of the common-law rule that contracts are to be enforced according to their terms, and that a contractor must stand by the words of his contract."

In Columbia Gas Const. Co. v. Holbrook, 6 Cir., 81 F.2d 417, at page 419 it is said: "We are not here concerned with the fairness of the arrangement. The court has no power to make a new contract for the parties, and to strain at construction where the terms are clear would be the writing of an agreement into which the parties had not entered."

Other authorities could be quoted to the same effect. It seems clear to us that the law is well settled that where parties expressly contract, under what circumstances an obligation may arise with reference to a certain subject-matter, where the same is entered into without fraud or mutual mistake, it excludes the possibility of an implied covenant of a contradictory or different nature. In the instant case, the alleged implied covenant, of course, is not contradictory to those expressly made, but it certainly is different and in addition thereto. There is no claim of fraud or mutual mistake; the parties were dealing at arms' length, and so far as is shown, there was no effort or intention on the part of either to prevent the other from incorporating any provision necessary for the protection of the contracting parties. If the parties had desired or intended to provide for the contingency here presented, they could and, no doubt, would have done so. Generalia specialibus non derogant.

We have examined the authorities cited by the plaintiff in support of its claim of implied promise and without exception they deal with situations where no written contract was involved.

Plaintiff also seeks to sustain his position from the standpoint of equity, and urges that a denial of his claim will result, at his expense, in an unjust enrichment of the defendant. We do not think we are called upon to deal with such a theory. The contracts called for the delivery of the flour at various times over an extended period and considering the nature of plaintiff's business, it is not an unreasonable assumption that whatever amount was included in the contract price as processing tax, was passed on to those with whom it dealt. There is, of course, no allegation in the pleadings to this effect, but in the absence of an allegation to the contrary, how can this court say, as between the parties hereto, that the defendant has money, even if it be conceded that the same was collected as a processing tax, which belongs to the plaintiff?

Plaintiff evidently relies largely upon the decision of the New York Court of Appeals in Wayne County Produce Company

v. Duffy-Mott Company, Inc., 244 N.Y. 351, 155 N.E. 669, which, no doubt, lends support to his theory. We think, however, it is distinguishable from the instant case. In that case there was no written contract involved and the amount paid as tax and held to be recoverable was not included in the sale price of the product, but was in addition thereto and billed as a separate item. The court, 244 N.Y. 351, on page 353, 155 N.E. 669, said: "This is not a case where the item of the tax is absorbed in a total or composite price to be paid at all events. In such a case the buyer is without remedy, though the annulment of the tax may increase the profit to the seller."

In the instant case the amount of the alleged tax was included and absorbed in the price named in the contract and paid by the buyer, and we think it was a price to be paid at all events. It is certain that the only protection afforded the buyer was a refund of any reduced price of the contracted article, which might result in the decrease of the processing tax. In the recent case of O'Connor-Bills, Inc., v. Washburn Crosby Company, D.C.W.D.Mo., Aug. 31, 1937, 20 F.Supp. 460, 462, which was an equitable action to recover an amount paid by the purchaser of goods as a processing tax but not paid by the seller to the Government, the District Court held: "The agreement did not provide for a refund if the contracts had been executed or fully carried out, nor neither did it provide for a credit or refund in the event the tax was held illegal. The payments made by the plaintiffs were entirely voluntary. The plaintiffs were not deceived nor overreached in making the payment; therefore they lost all title and legal interest in the funds thus paid. Shell Oil Co. v. Miller, Inc. (C.C.A.) 53 F.2d 74; Wourdack v. Becker, Collector (C.C.A.) 55 F.2d 840; Lash's Products Co. v. U. S., 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251."

In Heckman & Co., Inc., v. I. S. Dawes & Son Co., Inc., 56 App.D.C. 213, 12 F.2d 154, we find a case where a bill in equity was sought to be maintained for the recovery of tax money alleged to have been paid to the seller under a mistake of law. The court, 56 App.D.C. 213, 12 F.2d 154, on page 155 said:

"Should we remand the case, with permission to transfer it to the law side, the right of plaintiff to recover would depend on the facts here appearing. It is apparent, therefore, that plaintiff's right of recovery, whether at law or in equity, may be determined now, and unnecessary delay and expense avoided.

"The Revenue Act of 1918, as construed by the Treasury Department, imposed a tax on the manufacturer, not the dealer. The defendant, as such manufacturer, paid this tax. In selling to the plaintiff, it added to the selling price the amount of the tax, which plaintiff voluntarily paid in order to continue 'dealing in cider, which was a large and profitable portion of its business.' Defendant paid no tax for the plaintiff but for itself. The sale to the plaintiff was not induced by misrepresentation as to law or fact, nor was it the result of undue influence on the one side and undue confidence on the other. The payment of this 10 per cent. by the plaintiff, therefore, was the result of nothing more than a mistake of law, and such a situation presents no ground for equitable relief. * * *

"It is equally clear from what we have said that the defendant would be in no better position in an action at law, for 'the rule is firmly established that taxes voluntarily paid cannot be recovered back, and payments with knowledge and without compulsion are voluntary.'"

The Heckman Case was cited with approval by the Supreme Court in Lash's Products Company v. United States, 278 U. S. 175, on page 176, 49 S.Ct. 100, 73 L.Ed. 251, wherein the court was dealing with a similar question and where, it is said:

"The phrase 'passed the tax on' is inaccurate, as obviously the tax is laid and remains on the manufacturer and on him alone. Heckman & Co. v. I. S. Dawes & Son Co., 56 App.D.C. 213, 12 F.2d 154. The purchaser does not pay the tax. He pays or may pay the seller more for the goods because of the seller's obligation, but that is all. * * *

"The price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else. Therefore it is part of the price."

It is therefore our conclusion that plaintiff is not entitled to recover under the contracts sued upon and we might add, based upon the facts disclosed, that he is without remedy either in law or equity.

Judgment affirmed.

LINDLEY, District Judge (dissenting).

Each group of contracts provides that the price named includes all taxes "as at present determined by the Secretary of Agriculture by virtue of authority vested in him by the Agricultural Adjustment Act of the United States." The first group also provides that "if any reduction or reductions are hereafter made in said present taxes affecting the price named in this contract, then the seller agrees * * * to allow to the buyer the amount of such reduction or reductions." The second group provides that "if any tax included in the price hereof shall be decreased or abated, then, in that event, said decrease or abatement shall be deducted from the price hereof." It seems to me that these words clearly disclose an agreement upon the part of the contracting parties that the tax was a part of the purchase price and that, if it was found not due, so much of the price should fail.

"Abate," according to Bouvier's Law Dictionary, Rawle's Third Rev., is to beat down, destroy, quash. According to Webster, it means at law to break down or demolish, or to put an end to, to nullify, to make void. Manifestly such abatement may be in whole or in part. The term, when applied to taxes, is sometimes used in a technical sense (Gulf States Steel Co. v. United States, 5 Cir., 56 F.2d 43, 46), but, as the court there remarked, any proceedings for abatement "go * * * to the very root of the assessment, denying that it has been duly made."

Here it is obvious that the parties contemplated that if the taxes should be increased there should be an additional sum due to the vendor and that if they should be reduced or abated, the amount of the reduction or abatement should be credited and payable to the purchaser. All the taxes were abated as a result of judicial adjudication. They were held not legal and, therefore, not collectible. This was an abatement by our supreme judicial authority, certainly having as completely nullifying effect in destroying the taxes and liability therefor as the act of any administrative body. The parties have agreed that the taxes were included in the purchase price; that additional assessments would be due from the purchaser; and that all reductions and abatements should be credited to the purchaser. It follows, it seems to me, that the plaintiff in its complaint stated a good cause of action. I think the judgment should be reversed with directions to overrule the attack made upon the complaint. With what defendants may present as defense, arising out of the Windfall Tax or otherwise, we are not now concerned.