## SOUTHERN CALIFORNIA FREIGHT LINES, LIMITED, v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 8742.

Circuit Court of Appeals, Ninth Circuit.

Sept. 23, 1938.

H. J. Bischoff, of San Diego, Cal., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Warren F. Wattles, and Berryman Green, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

In computing net income for taxing purposes a taxpayer is permitted[1] "A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * *" The petitioner claimed depreciation on its motor equipment for the calendar year 1932 in the sum of $55,412.82, $35,627.28 of which was disallowed by the Commissioner of Internal Revenue. The taxpayer appealed to the Board of Tax Appeals following deficiency notice by the Commissioner of Internal Revenue. The Board of Tax Appeals sustained the Commissioner and the taxpayer petitions this court to review that decision.

The Board of Tax Appeals found the facts to be substantially as follows:

"The petitioner is a California corporation with its principal office in Los Angeles, operating motor freight lines in the southern part of the state. Its rolling equipment in 1932, including purchases of equipment during the year, consisted of 265 units, made up of 172 trucks and 93 trailers, semi-trailers and dollys, which were taken on its books at cost figures of $342,325.95. In

---

*Rehearing denied Nov. 7, 1938.

[1] Revenue Act of 1932, 47 Stat. 169, 179, § 23(k), 26 U.S.C.A. § 23(l).

its return for 1932, the petitioner took a deduction for depreciation on this equipment of $55,412.82, which the Commissioner reduced by $35,627.28 in accordance with a revenue agent's audit and report. Petitioner's depreciation reserve at the end of 1932 amounted to $273,164.56, leaving an equipment balance of $55,987.85.

"Of the petitioner's equipment on hand in 1932, there were originally acquired new 72 units, costing $181,511.84, consisting of 42 trucks, costing $129,996.20, and 30 trailers, costing $51,515.64. On this equipment acquired new, depreciation of $34,475.70 was taken in 1932. The remainder of the rolling equipment (159 units) had been used when acquired. A large majority (135 units) of the second-hand trucks and trailers were part of the equipment of four truck lines which the petitioner acquired in 1930 and 1931. The cost figures for second-hand units entered on the petitioner's records were the appraisals by its superintendent of operation and maintenance, who valued each piece of used equipment before it was purchased and estimated its useful life, whether it was acquired singly or as a part of the total equipment of other truck lines.

"Depreciation on petitioner's equipment acquired second-hand was computed separately on each unit on the basis of the useful life assigned to it by the superintendent at the time of its acquisition. Generally, the useful life assigned to second-hand trucks was two years, but each machine was treated separately, its useful life being determined by its condition at acquisition and the use to which it was to be subjected.
\*       \*       \*       \*       \*       \*

"Many of petitioner's trucks and trailers, acquired both new and used, have been operated by it after the expiration of their determined useful lives. A total of 33 trucks and 20 trailers, originally taken on the books at $112,275.24, were completely written off through depreciation by the end of 1931, but of these only 4 trucks, costing $12,739.14, were retired from service during 1932. Depreciation of $14,686.59 claimed on 90 other pieces of equipment in 1932 served to write off their entire original basis of $62,228.82, though only a few of them, costing $440, were retired from service by the end of the year."

The petitioner pursued a policy of maintenance and repair, which prolonged the life of its equipment, charging as expense amounts expended for reconditioning. Petitioner generally capitalized complete reconditioning but there is no evidence that such additions were charged to its equipment accounts. A policy of replacement of operating parts, such as batteries, transmissions and motors was followed so that maximum length of service might be obtained from all units, and these replacements were charged to expense. Amounts received for discarded equipment were credited to income, and accumulated depreciation on retired equipment charged to depreciation reserve.

" \*   \*   \* All trucks depreciated on a mileage basis were still in use at the end of 1932, though several had exhausted their estimated useful mileage. \*   \*   \* "

The Commissioner of Internal Revenue declined to accept petitioner's estimate of the useful life of individual units of its equipment and in its place fixed a useful life of equipment, for depreciation purposes, for used units at five years from the date of acquisition, and of new units at seven and one-half years. The Board of Tax Appeals upheld this ruling (36 B.T.A. 328) and the taxpayer petitions this court to review that decision.

The petitioner contends that it was entitled to a deduction of the full amount claimed for wear and tear and obsolescence on property owned by it; that the Commissioner's method of determining depreciation for the year 1932 was arbitrary.

"Depreciation allowances must be based on intelligent estimates and not mere guesses." Paul & Mertens, Law of Federal Income Taxation, Vol. 2, p. 561, Sec. 20.18. There is no burden on the Commissioner to prove the correctness of his assessment for, once he has formally determined the amount or rate of depreciation and made an assessment based thereon, the law presumes his action right and the assessment prima facie valid. Rieck v. Heiner, etc., 3 Cir., 25 F.2d 453, 454. The Commissioner's determination must give way, however, if proof shows his computation erroneous. Geuder, Paeschke & Frey Co. v. Commissioner, 7 Cir., 41 F.2d 308, 310; Cumberland Glass Mfg. Co. v. U. S., Ct.Cl., 44 F.2d 455, 460; Washburn Wire Co. v. Commissioner 1 Cir., 67 F.2d, 658, 660; Rieck v. Heiner, etc., supra.

The petitioner placed an estimated useful life (for depreciation purposes) upon each unit of its equipment, whether acquired new or second hand. Most of these

units, as found by the Board, exceeded that estimated useful life and were not retired but remained in service. The petitioner failed to prove that its estimates were correct and succeeded only in proving them erroneous, thus sustaining the prima facie correctness of the Commissioner's method of computing the depreciation. The Commissioner's rate is not arbitrary but, on the contrary, is in complete accord with the actual facts and life of the petitioner's equipment, as borne out by the evidence. For example, taking from petitioner's brief a list of cars "junked" we check the exhibits in the record to learn the year model of each, thus being advised of the actual life of each car listed. Striking an average, we are informed that each car junked had a life of ten plus years which, even though we reduce it to nine years to compensate for possible inaccuracies, is considerably greater than the seven and one-half year useful life assigned by the Commissioner to cars purchased new.

There is no evidence in the record which would justify overruling the findings of the Board and its decision is, therefore,

Affirmed.