## CREAM OF WHEAT CORPORATION v. MOUNDRIDGE MILLING CO.

### No. 1744.

District Court, D. Kansas, Second Division.

Sept. 29, 1938.

Claude I. Depew, of Wichita, Kan., for plaintiff.

Austin M. Cowan, of Wichita, Kan., for defendant.

HOPKINS, District Judge.

In this action, the defendant milling company, a first domestic processor of wheat as defined by the AAA, 7 U.S.C.A. § 601 et seq., and departmental regulations and subjected to payment of the processing tax, is being sued by one of its customers for the amount of the processing tax on purified middlings sold and delivered by the mill to plaintiff, which tax the mill was relieved from paying to the government by reason of an injunction order effective from May 1, 1935, and nullification of the Act by decision of the Supreme Court January 6, 1936. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

The action is based upon two written contracts, one dated January 30, 1935 for 3,000 barrels of middlings at $6.40 per barrel; and one dated June 20, 1935, for 10,000 barrels of middlings at $5.85 per barrel, and is for a sum equal to $1.38 per barrel on each barrel of middlings delivered under the two contracts between the effective date of the injunction order and the nullifying decision—920 barrels under the first contract and 1,940 barrels under the second contract, a total of 2,860 barrels at $1.38 per barrel, making up plaintiff's claim of $3,946.80.

The contracts provide that "the price named in this contract includes the processing taxes as now imposed" or "includes all taxes as at the date hereof proclaimed by the Secretary of Agriculture" under authority of the AAA. Both contracts provide that increased or additional tax shall be added to the purchase price and that any reduction, decrease, or abatement in the tax shall effect a corresponding reduction in the price to the buyer. The phraseology of the two contracts in this respect is not the same. The earlier contract provides: " * * * If any tax included in the price hereof shall be decreased or abated, then, in that event, said decrease or abatement shall be deducted from the price hereof."

The clause in the second contract reads: "Any decrease in the processing taxes as now or hereafter imposed by any legislative or administrative branch of the United States shall inure to the benefit of the buyer, if as and when the benefit of such decrease has been actually realized and secured by the seller, and shall be credited against the contract prices named in this contract to the extent—and only to the extent, that the grain used in the manufacture of the product covered by this contract is milled after the decrease in the processing tax takes effect, and to the extent that the seller is thereby definitely relieved from the processing tax."

The case was tried by the Court. The evidence largely was covered by stipulation and documentary exhibits. There was some oral testimony. The greater portion of the evidence was introduced, it appears, for the purpose of showing the parties dealt on the basis of a processing tax of $1.38 for each one hundred pounds of middlings, and that in fact the tax was imposed on that basis and in that amount.

The evidence establishes that the processing tax included in the price named in the contracts was a definite, fixed amount and, except for the tax, the price named in the contracts would have been less in that same definite amount.

Defendant's witness Krehbiel, manager of defendant company, testified that when the tax first went into effect July 6, 1933, defendant added to its existing contracts for middlings the processing tax of $1.38 per barrel. He stated, "We were so ordered by the Government." An Invoice (Exhibit 6) of that date carries the tax as a separate item at $1.38 per barrel. Subsequent to nullification of the tax in January, 1936, all shipments under the two contracts here in dispute were billed at a figure $1.38 less per barrel than the price named in the contracts, the allowance in that amount representing the nullified processing tax. The dealings between these parties from the date the tax was first imposed to the time of its nullification as evidenced by the documentary exhibits and the oral testimony establishes beyond any question that a processing tax of $1.38 per barrel was added to the price of purified middlings and the prices named in the two contracts of $6.40 and $5.85 per barrel included as a part of said amounts the sum of $1.38 representing process tax.

This evidence will support a finding that the contract price was not a composite price, but that the contract price included as a definite, known part thereof, the process tax of $1.38 per barrel. It is as though the contracts recited, "The prices named in this contract include the processing taxes as now imposed in the sum of $1.38 per barrel of purified middlings."

The evidence further included the files in the equity suit in which the order was entered restraining collection of the tax from and after May 1, 1935, and there is no dispute but that the tax here involved was impounded and returned to the defendant upon nullification of the tax by the United States Supreme Court. The tax, therefore, was not paid by defendant to the government and was, in fact, decreased or abated in its entirety as of May 1, 1935.

Defendant objects to the portions of the stipulation pertaining to the invoices and course of dealing between the parties prior to the processing tax, during the time the tax was collected and subsequent thereto. But it is well settled that circumstances prior to and contemporaneous with the execution of a written contract, as well as conduct of the parties subsequent thereto indicating a particular interpretation of the contract by the parties themselves, may be shown in aid of its interpretation.

The real issue in the case then is the effect to be given to the provisions in the two contracts that any decrease or abatement in the amount of the tax should inure to the benefit of the buyer, considered in the light of the evidence establishing the amount of the tax included in the price named in the contracts was a definite known amount, $1.38 per barrel.

Defendant relies on federal decisions and decisions of state courts other than Kansas, and especially upon the case of

Johnson v. Igleheart Bros., 95 F.2d 4, decided by the Seventh United States Circuit Court of Appeals, and in which certiorari has been denied by the United States Supreme Court, 58 S.Ct. 1058, 82 L.Ed. ——.

Plaintiff on the other hand contends that no question of federal statute or federal law is involved; that the question is simply one of construing the contracts and that, following the recent Erie Railroad Case, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the Kansas law must prevail.

In view of the finding made that the price named in the contract was not a composite price to be paid at all events, but included as a part thereof the processing tax, a definite amount known to the parties, and following the Kansas decisions, the conclusions of law will be for recovery by the plaintiff.

There are definite distinguishing features between the instant case and the Seventh Circuit decision upon which defendant relies. That case was decided on a demurrer to the petition, and the amount of the process tax included in the contract price was not known, as here. In that case recovery was being sought on contracts which had been fully executed, the commodity subject to the tax had been shipped and paid for by the buyer, and the court observed in that case that the provision relative to reduction or decrease in amount of the tax concerned future sales. But in the instant case, due to the injunction order and the impounding of the money, the tax was completely reduced and abated as of May 1, 1935, which was prior in time to the milling and shipping of the middlings upon which the tax sought to be recovered was imposed. In the injunction suit this defendant alleged it was necessary that it bring the suit for the protection of its customers.

In interpreting these contracts, the situation of the parties at the time the contracts were executed must be viewed objectively and consideration given to the intention of the parties as manifested by the wording of the contracts and by the surrounding circumstances. It is clear to me that by the use of the words "reduction," "decrease" and "abatement," considered in connection with the allegations of the bill of complaint in the injunction suit, and the other surrounding circumstances, that the parties had in mind that if for any reason defendant was relieved of the obligation of paying the processing tax to the government, this plaintiff should receive the benefit thereof on the price which it paid defendant from and after the date defendant was so relieved from paying the tax. By reason of the injunction order and the impounding of the proceeds of the tax, defendant was so relieved from and after May 1, 1935. After nullification of the tax, January 6, 1936, defendant immediately began allowing plaintiff credit on the shipments thereafter under these contracts for the amount of the tax, $1.38 per barrel.

Under the facts in this case, defendant was as much relieved by the injunction order effective May 1, 1935 as it was by the nullifying decision of January 6, 1936.

The suggested findings of fact and conclusions of law submitted by the plaintiff are adopted as the findings and conclusions of the Court.

An appropriate order may be drawn making effective this decision of the court.